**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

ILANA GAMZA - MACHADO DE SOUZA,

                    Plaintiff,

  -against-

PLANNED  PARENTHOOD  FEDERATION  OF
AMERICA,  INC.,  RACHEL  MORENO,  AND
GEORGE WALKER,
                    Defendants.
-------------------------------------------------------------------X

Civil Case No:

**COMPLAINT**

Plaintiff Demands a
Trial by Jury

Plaintiff ILANA GAMZA - MACHADO DE SOUZA by and through her attorneys DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendants PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., RACHEL MORENO, AND GEORGE WALKER, (collectively referred to as "Defendants,") upon information and belief as follows:

**NATURE OF CASE**

Plaintiff, ILANA GAMZA - MACHADO DE SOUZA complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"), 42 U.S.C. §1981, the Administrative Code of the City of New York and the laws of the State of New York, based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), and 28 U.S.C. §1367, seeking declaratory relief and damages to redress the injuries Plaintiff has suffered as a result of, *inter alia*, race discrimination, religious discrimination, hostile work environment, retaliation, and unlawful termination by Defendants.

1

## JURISDICTION AND VENUE

1. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII and 42 U.S.C. §1981. The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

2. Additionally, the Court has supplemental jurisdiction under the State and City laws of New York.

3. Around January 19, 2021, Plaintiff ILANA GAMZA - MACHADO DE SOUZA submitted a Charge of Discrimination to the U.S. Equal Employment Opportunity Commission ("EEOC"). The federal charge number is 520-2021-01427.

4. Around March 26, 2021, Plaintiff ILANA GAMZA - MACHADO DE SOUZA received a Right to Sue Letter from the EEOC for federal charge number 520-2021-01427.

5. Plaintiff satisfied all administrative prerequisites and is filing this case within the applicable Statute of Limitations.

6. Venue is proper in this court, as the events giving rise to this action arose in New York County, within the Southern District of New York.

## PARTIES

7. Plaintiff is a Jewish female resident of the State of New Jersey, County of Monmouth.

8. At all times material, PLANNED PARENTHOOD FEDERATION OF AMERICA, INC. (hereinafter referred to as "Planned Parenthood") is a domestic not-for-profit corporation duly existing by the virtue and laws of the State of New York that does business in the State of New York.

9. At all times material, Rachel Moreno (hereinafter referred to as "Moreno") was and is the Vice President of Brand and Culture Strategy at Planned Parenthood. Moreno held supervisory authority, controlling many of Plaintiff's job duties. Moreno held the power to hire and fire Plaintiff.

10. At all times material, George Walker (hereinafter referred to as "Walker") was and is the Vice President of Diversity, Equity, and Inclusion at Planned Parenthood. Walker held supervisory authority over Plaintiff, including the power to hire and fire Plaintiff.

## STATEMENT OF FACT

11. Around October 1, 2019, Planned Parenthood hired Plaintiff as the Senior Brand Marketing Director within their Communications & Culture Department.

12. Around November 2019, Defendant Moreno asked Plaintiff to hire a Director of Multicultural Brand Engagement who would deal with celebrity and influencer outreach that would report directly to Plaintiff.

13. Afterwards, Plaintiff asked why Defendant Planned Parenthood's Senior Director of Arts & Entertainment Engagement Caren Spruch ("Spruch"), who was already doing a similar job, either handle those job duties herself or hire someone that would report directly to her.

14. In response, Defendant Moreno told Plaintiff that she "DOES NOT WANT AN OLD JEWISH WOMAN RUNNING A MULTICULTURAL DEPARTMENT." Defendant Moreno also told Plaintiff that she would like to have Defendant Planned Parenthood's Senior Director of Arts & Entertainment Engagement Spruch fired or forced to quit.

15. Around January 2020, Defendant Planned Parenthood held a meeting regarding the Black Lives Matter movement. At that meeting, Defendant Planned Parenthood's Director of Black Leadership and Engagement Nia Martin-Robinson ("Martin-Robinson") stated that there were too many white Jewish Chief Executive Officers in positions of power, and it is time to get them out.

16. Around June 22, 2020, Plaintiff asked Defendant Planned Parenthood's Employee Resource Group ("ERG") Coordinator Ciara Walton ("Walton"), if there was an ERG for Jewish employees at Planned Parenthood and if there was not, if she could move forward with creating a Jewish ERG.[1]

17. Around June 24, 2020, Plaintiff followed up with Defendant Planned Parenthood's Employee Resource Group Coordinator Walton because she did not receive a response.

18. Around June 25, 2020, Defendant Planned Parenthood's Employee Resource Group Coordinator Walton emailed Plaintiff that she was "good to go." Thereby, authorizing Plaintiff to fill out the charter and move forward with setting up a Jewish ERG.

19. Afterwards, Plaintiff began to seek out interested employees because Defendant Planned Parenthood required at least fifteen interested employees in order to establish an ERG. After a few weeks, Plaintiff had garnered more than twenty employees interested in a Jewish ERG.

20. Around July 16, 2020, Plaintiff emailed Defendant Planned Parenthood's Employee Resource Group Coordinator Walton to inform her that she had sufficient interest from more than twenty employees and to inquire if she could officially establish the Jewish ERG.

21. Around July 24, 2020, Plaintiff followed up with Defendant Planned Parenthood's Employee Resource Group Coordinator Walton because she did not receive a response.

22. Around July 29, 2020, Plaintiff submitted the charter application to Defendant Planned Parenthood's Employee Resource Group Coordinator Walton in order to establish the Jewish ERG.

23. Around July 30, 2020, Plaintiff found out that Defendant Planned Parenthood's Employee Resource Group Coordinator Walton left the company.

24. That same day, Plaintiff emailed Defendant Walker to discuss next steps in setting up the ERG.

---

[1] An employee resource group ("ERG") is a voluntary, employee-led group made up of individuals who join together based on common interests, backgrounds or demographic factors such as gender, race, religious affiliation, or ethnicity.

25. Around July 31, 2020, Defendant Walker emailed Plaintiff that the ERG had not been approved and that he needed to make sure that "THE IDENTITY MARKERS [WERE] CRITICAL TO THE BUSINESS."

26. Around August 5, 2020, Plaintiff followed up with Defendant Walker to discuss creating a Jewish ERG. In response, Defendant Walker suggests that he and Plaintiff speak the following week.

27. Around August 11, 2020, Plaintiff and Defendant Walker had a video conference to discuss his concerns regarding establishing a Jewish ERG.

28. During that meeting, Defendant Walker expressed concerns about having a Jewish ERG because he did not want a religious ERG which prompted Plaintiff to explain that being Jewish is also a race and ethnic identity.

29. Furthermore, Defendant Walker had issues that the charter Plaintiff submitted for the Jewish ERG was not correlated closely enough with Defendant Planned Parenthood's overarching organizational goals.

30. However, the mission statements for the Asian and Pacific Islander ERG, the Latinxs ERG, and the Black ERG were not correlated at all with Defendant Planned Parenthood's organizational goals.

31. Around August 17, 2020, in light of their conversation, Plaintiff emailed Defendant Walker additional research concerning Jewish people as race/ethnic group that experience unique health disparities and an updated charter more in line with Defendant Planned Parenthood's organizational goals.

32. Around August 21, 2020, Defendant Walker emailed Plaintiff that he is "STILL NOT SURE IN THE OBJECTIVES [PLAINTIFF] MAKE[S] A CASE FOR AN ERG" and that the updated

charter does not clarify that the Jewish ERG would be about ethnicity and identity as opposed to religion.

33. Around August 24, 2020, Defendant Planned Parenthood's Manager of the Office of the President Maxine Squires ("Squires"), another Jewish employee working with Plaintiff to set up the ERG, emailed Defendant Planned Parenthood's Project Manager Sherylle Bates ("Bates") to request the charter for the other ERG's to use as a reference for their charter.

34. Around August 26, 2020, Defendant Planned Parenthood's Project Manager Bates replied with the charter documents for the Asian and Pacific Islander, Black, and Latino ERGs. However, she did not give Plaintiff the charter documents for any of the other ERG groups at Planned Parenthood.

35. Around September 3, 2020, Plaintiff replied that the other ERG's mission statements were similar to the Jewish ERG's proposed charter and do not seem to align with or track Defendant Planned Parenthood's organizational goals.

36. Furthermore, Plaintiff forwarded literature stating that ERG's are designed to foster a diverse, inclusive workplace and are usually led by employees who share a characteristic, whether it's gender, ethnicity, or *religious affiliation* (emphasis added).

37. As a result, Plaintiff inquired what else was required in order to finally establish a Jewish ERG at Planned Parenthood especially before the upcoming Jewish holidays. However, Defendants never replied to Plaintiff's email.

38. Around September 4, 2020, Defendant Planned Parenthood's Manager of the Office of the President Squires followed up by noting an increased rise in anti-Semitism and the resulting need for a Jewish ERG especially before the upcoming Jewish holidays. Unfortunately, Defendants never replied to this email either.

39. Around September 8, 2020, Defendant Planned Parenthood's Manager of the Office of the President Squires and Defendant Walker had a discussion regarding Defendant Walker's concerns regarding Squires' recent email and establishing a Jewish ERG.

40. During that conversation, Defendant Walker told Squires that her email inappropriately juxtaposed the need for a Black ERG with a Jewish ERG by "RANKING OPPRESSIONS."  Further, Defendant Walker stated that Orthodox Jewish women were "BIRTHING FACTORIES" and that the role of a Jewish ERG should be about educating Orthodox Jewish women about birth control.

41. Around September 15, 2020, Defendant Planned Parenthood's Manager of the Office of the President Squires emailed Defendant Walker that Defendant Planned Parenthood's calendar did not include Jewish holidays, despite his contention to the contrary.

42. Around September 21, 2020, Defendant Planned Parenthood held an all staff meeting, despite the fact that many Jewish employees had taken the day off due to the Jewish New Year.

43. Around October 20, 2020, Plaintiff emailed Defendant Walker an updated proposed charter in addition to concerns she had regarding "ANTISEMITISM/MICRO-AGRESSIONS TOWARDS JEWISH FOLKS AT PPFA" based on a conversation she and Defendant Planned Parenthood's Manager of the Office of the President Squires had with several Jewish employees that had previously expressed their concerns regarding anti-Semitism at Planned Parenthood.

44. Around October 21, 2020, Defendant Walker again pushes back by emailing Plaintiff that "I AM HAPPY TO ENTERTAIN THE IDEA OF AN ERG, BUT I ALSO WANT TO MAKE SURE IT MEETS WITH THE BUSINESS CASE. OTHERWISE, WE CAN SUPPORT OR GIVE SOME GUIDANCE FOR AN AFFINITY GROUP." However, Defendant Walker completely refused to acknowledge Plaintiff's concerns regarding anti-Semitism within the organization.

45. Around October 28, 2020, Plaintiff again reiterates her concerns and the need for Defendant Planned Parenthood to address the "MICROAGGRESSIONS TOWARD THE JEWISH FOLKS AT PLANNED PARENTHOOD."

46. Around October 29, 2020, Defendant Walker again pushes back by emailing Plaintiff that the charter still needs to be adjusted because he wanted "TO MAKE SURE THAT THE CHARTER IS SET UP AIR TIGHT SO WE ARE SOLID IN MOVING THE WORK FORWARD." Thus, for the second time, Defendant Walker completely refused to acknowledge Plaintiff's concerns regarding anti-Semitism within the organization.

47. Around November 4, 2020, Plaintiff and Defendant Walker had another conversation to discuss the Jewish ERG. During that conversation, Defendant Walker advised that part of the reason the Jewish ERG was not operational was because Plaintiff did not pick out an advisory board, despite the fact that Defendant Walker explicitly told Plaintiff not to worry about picking an advisory board when they discussed the ERG back in August.

48. Around November 30, 2020, just as Plaintiff was about to finalize her advisory board and create the ERG, Defendant Planned Parenthood terminated Plaintiff claiming that they were moving in a different direction. However, a few weeks later, Plaintiff noticed Defendant Planned Parenthood had posted an opening online for a job position with the exact same title and duties.

49. Ultimately, Defendant Planned Parenthood unlawfully terminated Plaintiff due to race and religious discrimination, and because they refused to address or take any type of corrective action in response to Plaintiff's repeated complaints of unlawful race and religious discrimination.

50. At the time Defendant Planned Parenthood unlawfully terminated Plaintiff, Plaintiff's annual salary was approximately $160,000.

51. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

52. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments including extreme anxiety and severe depression.

53. As a result of Defendants' unlawful and discriminatory actions, Plaintiff became so physically and emotionally distressed that she is having difficulty eating and sleeping.

54. As a result of Defendants' unlawful and discriminatory actions, Plaintiff has endured unwarranted financial hardships and irreparable damage to her professional reputation.

55. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation, which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

56. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against Defendants.

57. The above are just some of the examples of unlawful discriminatory and retaliatory conduct to which Defendants subjected Plaintiff.

58. Plaintiff claims that she was unlawfully terminated and also seeks reinstatement.

59. Plaintiff claims a continuous practice of discrimination and claims a continuing violations and makes all claims herein under the continuing violations doctrine.

**AS A FIRST CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER TITLE VII**
**(Against Defendant Planned Parenthood)**

60. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

61. Title VII states in relevant part as follows:

    (a) Employer practices: It shall be an unlawful employment practice for an employer:

        (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

62. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendant. Among other discriminatory comments and conduct, Defendant Planned Parenthood discriminated against Plaintiff on the basis of Plaintiff's race and religion, creating a hostile work environment. Plaintiff complains of Defendant Planned Parenthood's violations of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race or religion.

63. Defendant Planned Parenthood engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq., by harassing and otherwise discriminating against Plaintiff as set forth herein.

64. Defendant Planned Parenthood violated the above and Plaintiff suffered numerous damages as a result.

**AS A SECOND CAUSE OF ACTION**
**FOR RETALIATION UNDER TITLE VII**
**(Against Defendant Planned Parenthood)**

65. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

66. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

67. Defendant Planned Parenthood engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of Plaintiff's opposition to the unlawful employment practices of Defendants.

68. Defendant Planned Parenthood violated the above and Plaintiff suffered numerous damages as a result.

**AS A THIRD CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER 42 U.S. CODE § 1981**
**(AGAINST ALL DEFENDANTS)**

69. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

70. 42 U.S. Code § 1981 - Equal rights under the law states provides:

(a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to

the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

71. Defendants constantly enforced a purposefully discriminatory pattern and practice of depriving Jewish individuals of the equal rights described therein, in further violation of 42 U.S.C. §1981.

72. As a result of Defendants' discrimination in violation of Section 1981, Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of Plaintiff's contractual relationship which provided substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and having suffered such anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendants' actions, thereby entitling Plaintiff to compensatory damages.

73. As alleged above, Defendants acted with malice or reckless indifference to the rights of the Plaintiff and copious other individuals named herein, thereby entitling Plaintiff to an award of punitive damages.

74. Defendants violated the above and Plaintiff suffered numerous damages as a result.

75. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of 42 U.S.C. § 1981. Plaintiff claims Defendants both unlawfully discriminated against Plaintiff and unlawfully retaliated against Plaintiff in violated of 42 U.S.C. 1981.

## AS A FOURTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW
## (AGAINST ALL DEFENDANTS)

76. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

77. New York State Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, [Effective January 19, 2016: familial status,] marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

78. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of Plaintiff's race and religion, as well as creating a hostile work environment and wrongfully terminating Plaintiff based on Plaintiff's membership in the aforementioned protected classes.

79. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

80. Defendants violated the above and Plaintiff suffered numerous damages as a result.


## AS A FIFTH CAUSE OF ACTION
## FOR RETALIATION UNDER STATE LAW
## (AGAINST ALL DEFENDANTS)

81. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

82. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

83. Defendants engaged in an unlawful discriminatory practice by retaliating, terminating, and otherwise discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of Plaintiff's opposition to the unlawful practices of Defendants.

84. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

85. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A SIXTH CAUSE OF ACTION**
**FOR AIDING AND ABETTING UNDER STATE LAW**
**(AGAINST ALL DEFENDANTS)**

86. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

87. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

88. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the unlawful, discriminatory, and retaliatory conduct as stated herein.

89. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

90. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A SEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

91. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

92. The Administrative Code of the Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

93. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff as set forth herein.

94. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

95. Defendants violated the above and Plaintiff suffered numerous damages as a result.


## AS AN EIGHTH CAUSE OF ACTION
## FOR RETALIATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

96. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

97. The New York City Administrative Code Title 8, §8-107(1) (e) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

98. Each of the Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Tide 8, §8-107(1) (e) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

99. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State City Administrative Code Title 8.

100. Defendants violated the above and Plaintiff suffered numerous damages as a result.


## AS A NINTH CAUSE OF ACTION FOR AIDING AND ABETTING UNDER THE NEW YORK CITY ADMINISTRATIVE CODE (AGAINST ALL DEFENDANTS)

101. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

102. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

103. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling, and coercing the above discriminatory, unlawful, and retaliatory conduct.

104. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

105. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A TENTH CAUSE OF ACTION
## FOR INTERFERENCE UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

106. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

107. New York City Administrative Code Title 8-107(19) Interference with protected rights states, in relevant part: It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

108. Defendants violated the section cited herein as set forth.

109. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS AN ELEVENTH CAUSE OF ACTION FOR SUPERVISOR LIABILITY
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

110. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

111. New York City Administrative Code Title 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent or independent contractor provides:

      a.  An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

      b.  An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of

this section only where: The employee or agent exercised managerial or supervisory responsibility; or the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or the employer should have known of the employee's or agents discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

112. Defendants violated the above and Plaintiff suffered numerous damages as a result.


**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in an amount which exceeds the jurisdiction of all lower courts for all damages including but not limited to compensatory damages, punitive damages, statutory damages, lost wages, back pay, front pay, attorney's fees, costs, interest and all other damages as are just and proper to remedy Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff demands a jury trial on all issues to be tried.


Dated:  New York, New York
          June 24, 2021

                                        **DEREK SMITH LAW GROUP, PLLC**

                                        By: **/s/ Daniel Altaras**
                                          Daniel J. Altaras, Esq.
                                          One Penn Plaza, Suite 4905
                                          New York, New York 10119
                                          (212) 587-0760