

**Brian Farkas**
Associate
212.492.3297 DIRECT
212.484.3990 FAX
brian.farkas@arentfox.com

**Nancy Puleo**
Partner
617.973.6124 DIRECT
617.367.2315 FAX
nancy.puleo@arentfox.com

1301 Avenue of the Americas
42nd Floor
New York, NY 10019

212.484.3900 MAIN
212.484.3990 FAX

afslaw.com

*Plaintiff shall file a response to this letter by March 24, 2022.  So Ordered.*

*Dated:  March 21, 2022*
*New York, New York*

*LORNA G. SCHOFIELD*
*UNITED STATES DISTRICT JUDGE*

March 17, 2022

**VIA ECF**

Hon. Lorna G. Schofield, U.S.D.J.
United States District Court, Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *Gamza-Machado De Souza v. Planned Parenthood Federation of America, et al.,* Case No. 1:21-cv-05553-LGS

Dear Judge Schofield:

      This Firm represents Defendants Planned Parenthood Federation of America, Inc. ("PPFA"), Rachel Moreno, and George Walker (collectively, "Defendants") in the above-referenced matter. We write pursuant to Local Civil Rule 37.2 and Rule III(C)(3) of Your Honor's Individual Rules to respectfully request that the Court schedule a discovery conference to discuss Defendants' intended motion to compel Plaintiff Ilana Gamza-Machado De Souza ("Plaintiff") to (1) issue supplemental medical release authorizations and (2) continue her video deposition for another three hours.[1] This application stems largely from Plaintiff's refusal to provide reasonable discovery into her mental health, despite seeking millions of dollars for purported psychological and/or medical damages.

**Background**

      This is an employment discrimination and retaliation case. Plaintiff worked for PPFA between October 1, 2019 and November 30, 2020. Her core allegation is that she was subjected to anti-Semitism while at PPFA and ultimately terminated because she is Jewish.[2] (Dkt. 33 at ¶¶ 60-108). Plaintiff claims that because of Defendants' actions, she "felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed" (*id*. at ¶ 51) and that she "suffered and continues to suffer severe emotional distress and physical ailments including extreme anxiety and severe depression." (*Id*. at ¶ 52). After her termination, she "became so physically and emotionally distressed that she is having difficulty eating and sleeping." (*Id*. at ¶ 54). Finally, she alleges that she "suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses" and "claims aggravation, activation, and/or exacerbation of any preexisting condition." (*Id*. at ¶ 55). In short, Plaintiff's mental health and medical history are at the heart of her case.[3]

---

[1] Beyond the medical releases and a renewed deposition, Defendants still seek records relating to Plaintiff's post-termination income. The Court previously ordered that Plaintiff produce wage records for the two employers she had identified. (Dkt. 42). Discovery has revealed a *third* post-termination employer. As of the date of this filing, Plaintiff has not yet provided income/wage records, but has agreed to do so before the end of fact discovery. Thus, this application does not concern those records.

[2] Defendants vehemently deny the merits of Plaintiff's claims. Indeed, discovery has revealed that Plaintiff was terminated because of severe and well-documented performance issues.

[3] In addition to its relevance to Plaintiff's claims, Plaintiff's medical history may also support Defendants' defenses. This is because she was terminated for performance issues that could be attributed, in part, to diagnoses that appear to be heavily corroborated by her medical history (e.g., inability to focus, paranoia, high anxiety, and difficulty communicating).

**Smart In Your World**®



**Medical Records and Additional Release Authorizations Sought by Defendants**

Plaintiff has produced medical records that begin on May 5, 2020—about seven months into her tenure at PPFA. These records reveal that Plaintiff experienced anxiety, depression, paranoia, and related conditions. But they also reveal that ***she was treated for these same conditions <u>before</u> she worked at PPFA***. Indeed, they indicate that Plaintiff was being treated by healthcare providers who prescribed medications for these conditions at least since January 2019. Nevertheless, Plaintiff has refused to provide corresponding medical release authorizations to allow Defendants to obtain these records. Defendants have endeavored to narrow their requests in good faith during a series of meet-and-confers, most recently on March 16, 2022. But Plaintiff has not budged.

A brief outline of the disclosures to date is helpful. In her November 3, 2021 responses to Defendants' Interrogatories, Plaintiff identified four medical providers. On November 18, 2021, Plaintiff executed authorizations to allow Defendants to obtain her records directly from the providers for the period of October 2019 to the present. Additionally, Plaintiff produced a handful of pages of medical records in her First Document Production on November 3, 2021. (Bates Stamped as P000239 – P000259). After reviewing these limited records, Defendants quickly saw references to ***different providers*** who prescribed ***different treatments*** for the ***same conditions*** that Plaintiff alleges in this lawsuit (e.g., anxiety, depression, paranoia) from ***before*** her employment with PPFA. The undersigned contacted Plaintiff's counsel, who agreed to issue revised authorizations to cover the period dating back to October 2017. Plaintiff issued those revised authorizations on November 30, 2021. Defendants then served those authorizations on the providers, and received more robust records from two sources: Margo E. Rappaport, PhD (a psychologist who treated her beginning in May 2020) and Jersey Medical Care (a facility with multiple providers who treated her beginning in November 2020). Plaintiff seems to have agreed to produce authorizations for these providers from October 2017 to the present, knowing that she only saw those providers beginning in 2020. Thus, while conceding that Defendants are entitled to Plaintiff's medical records prior to her employment with PPFA, Plaintiff has not actually provided any such records and refuses to provide Defendants with authorizations to allow Defendants to obtain the records directly from her medical providers.

The records produced to date demonstrate why further disclosure is required. During Plaintiff's May 5, 2020 session with Margo E. Rappaport (her first visit), the provider's notes state: "[Plaintiff] had severe post partum depression starting 1/14/19 […] Pt consistently feels anxious, panic and on edge. While in active episode still unable to cope and only able to use the skills after the initial attack. Pt stated 'I want to be able to feel like myself again, to be able to be calm, not to be so sad and anxious. To be able to concentrate and focus.' Pt had seen psychiatrists for medication management. Dr. Dispoto (NP) Escitalopram and Clonazepam for depression and anxiety.'" Thus, it is apparent that Plaintiff has seen—or is currently seeing—additional medical providers that were not disclosed, and for which she has not provided release authorizations.[4] Again, Plaintiff saw these providers for the ***same psychological and/or medical conditions*** that are raised by the Amended Complaint as being attributable to Defendants' conduct.

---

[4] The records indicate that there may be other undisclosed providers. During Plaintiff's November 20, 2020 visit with Jersey Medical Care, the provider's notes state: "[S]he was taking Clonazepam for 3 months but was feeling nausea . . . . she started taking Vistaril, states she still takes Clonazepam occasionally . . . [S]he was also prescribed Zoloft but it made her feel "fuzzy" so she stopped, prior to giving birth she was rarely anxious, she was fearless and traveled allot and was not scared of little things, now she panics due to little things, clonazepam makes her feel better[.]" Plaintiff has not produced any information about who prescribed her Clonazepam and Vistaril, nor has she produced any information reflecting the changes in her dosage. Similarly, her July 15, 2021 visit with Jersey Medical Care, the provider's notes state: "[S]he saw her GP and was placed on buspirone" (another anxiety medication). Plaintiff has not produced any information about her general practitioner or this prescription.



To summarize, Plaintiff was diagnosed with "severe post-partum depression" beginning in January 2019 (about eight months before starting at PPFA). She appears to have been undergoing various psychological and/or psychiatric treatments since *at least* January 2019. Yet in this lawsuit, she claims that her employment at PPFA is responsible for her "severe emotional distress and physical ailments including extreme anxiety and severe depression" (Dkt. 33 at ¶ 52) and/or "aggravation, activation, and/or exacerbation of any preexisting condition." (*Id*. at ¶ 55). Those allegations cannot be tested without full disclosure of relevant medical records.

For nearly two months, Defendants have requested that Plaintiff provide medical authorizations for all mental health providers, including those who prescribed psychotropic medications, for the time period of October 1, 2017 to the present. These conversations were memorialized in our January 27, 2022 letter to Plaintiff's counsel (*see* **Exhibit A**) as well as a subsequent letter dated February 23, 2022 (*see* **Exhibit B at 4**) that addressed unrelated discovery negotiations. Counsel also held several unsuccessful telephonic meet-and-confer discussions on this topic. Plaintiff's counsel has taken the position that Defendants' requests are overly broad, amounting to a fishing expedition into Plaintiff's entire medical history. We disagree. Our requests concern only her mental health, and are appropriately tailored to the issues in the case.

Time is of the essence. Fact discovery is set to conclude on March 18, 2022, and expert discovery is scheduled to conclude on May 2, 2022. (Dkt. 51 at 3). Defendants' rebuttal expert report is due on April 15, 2022. (*Id*.). On February 4, 2022, the Court granted Defendants' motion to have a board-certified psychiatrist conduct a Rule 35 examination of Plaintiff. (Dkt. 47). That examination, along with a detailed review of Plaintiff's medical records, will inform expert discovery in this matter. Defendants would be severely prejudiced if our expert is forced to conduct Plaintiff's Rule 35 examination and write a rebuttal report without access to the entirety of the relevant medical records about her mental health. Defendants would be further prejudiced if we were forced to depose Plaintiff's expert without those records. The Court should compel Plaintiff to issue supplemented medical release authorizations.

**Defendants Seek To Continue Plaintiff's Deposition For No More Than Three Hours**

Plaintiff was deposed via Zoom on February 18, 2022 from approximately 9:30 a.m. to 5:03 p.m. During the day, the parties took approximately 60 minutes of breaks, meaning that she was deposed for a total of approximately 6.5 hours. As they noted on the record towards the end of the day, Defendants seek to continue her deposition for no more than three hours via Zoom. Despite our best efforts to reach compromise, Plaintiff refuses to consent. Defendants' request is eminently reasonable for three reasons.

*First*, as a matter of proportionality, Plaintiff has shouldered minimal burden in this litigation compared to Defendants. Plaintiff has deposed *eight* PPFA-affiliated witnesses for a total of approximately **28 hours**.[5] Defendants have also reviewed and produced the overwhelming majority of documents in this case—well over 3,000 pages, compared to only 265 pages produced by Plaintiff. Plaintiff is the sole fact witness whom Defendants are deposing. An additional three hours is hardly an unreasonable request in this context. Nor is it particularly burdensome, given that Plaintiff can be deposed from the comfort of her home at a mutually convenient time.

---

[5] These witnesses included: Caren Spruch, Rachel Moreno, Sherylle Bates, Charise Beckett, Ciara Walton, Maxine Squires, George Walker, and Steve Manley.



*Second*, Plaintiff's first deposition date was slowed by two factors. First, Plaintiff replied with some version of "I don't recall," "I don't remember," or "I don't know" approximately **280 times** in response to Defendants' questioning. This required simple questions to be rephrased, often multiple times. Second, Plaintiff had intermittent Internet connectivity issues that required the repetition of questions and answers throughout the day. While these technical issues were not so severe as to require halting the testimony, they were noted by both Defendants' counsel and Plaintiff's counsel, as well as by the stenographer who had difficulty hearing the witness.

*Third*, Defendants did not have an opportunity to question Plaintiff on the medical and psychological elements of her damage claim. Despite having sent a demand letter to Plaintiff on January 27, 2022 seeking supplemental release authorizations—more than three weeks before her deposition—Plaintiff never replied to that letter or provided those releases. At the very least, Defendants should be able to depose her about whatever records they now have in their possession.

In our meet-and-confers, Plaintiff's counsel has cited two reasons for opposing a continued deposition. First, he has stated that the undersigned agreed to limit her testimony to a single day. It is true that Plaintiff had a hard stop at 5 p.m., and Defendants agreed to endeavor to finish by that time, and expressed optimism that this would be possible. But while that was certainly the goal, there was never any unconditional promise to that effect. Second, Plaintiff's counsel has relied upon the language of Rule 30(d)(1) that provides that "[u]nless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours." But that same Rule also provides that "[t]he court must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent . . . or any other circumstance impedes or delays the examination." Courts regularly cite that provision to extend the time of depositions by a reasonable number of hours. *See, e.g.*, *Robinson v. De Niro*, No. 19 Civ. 9156, 2022 WL 274677, at *3 (S.D.N.Y. Jan. 26, 2022); *Republic of Turkey v. Christie's, Inc.*, 326 F.R.D. 402, 407 (S.D.N.Y. 2018); *Rahman v. Smith & Wollensky Rest. Grp.*, No. 06 Civ. 6198, 2009 WL 72441, at *4 (S.D.N.Y. Jan. 7, 2009); *Condit v. Dunne*, 225 F.R.D. 100, 112 (S.D.N.Y. 2004).

**Conclusion**

Plaintiff herself has put her psychological and medical history into dispute.[6] She cannot claim to have suffered injuries, and then refuse to provide records of her history and treatment for these precise conditions. This is particularly true given that she has claimed that her harm should be valued at many millions of dollars. Accordingly, we respectfully request that the Court schedule a discovery conference and ultimately direct Plaintiff to issue supplemental revised medical release authorizations as described herein, and return to her video deposition for another three hours.

Respectfully,

*/s/ Brian Farkas*                */s/ Nancy J. Puleo*
Brian Farkas                  Nancy J. Puleo

*Cc: All counsel of record via ECF.*

---

[6] To state the obvious, it is highly suspicious that Plaintiff is stonewalling access to these records. In a normal litigation where a plaintiff alleges that defendants caused severe emotional distress, that plaintiff would *want* to show that her conditions were created or exacerbated by defendants. Here, Plaintiff only wishes to show the factfinder a curated selection of her medical history.

# Exhibit A

Defendants' January 27, 2022 Letter to Plaintiff's Counsel on Medical Release Authorization Deficiencies

# Arent Fox

**Arent Fox LLP** / Attorneys at Law
Boston / Los Angeles / New York / San Francisco / Washington, DC

January 27, 2022

**Brian Farkas**
Associate
212.492.3297 DIRECT
212.484.3990 FAX
brian.farkas@arentfox.com

VIA EMAIL
Daniel J. Altaras, Esq.
The Derek Smith Law Group
One Penn Plaza, Suite 4905
New York, New York 10119
(908) 414-4235
dan@dereksmithlaw.com

**Nancy Puleo**
Partner
617.973.6124 DIRECT
617.367.2315 FAX
nancy.puleo@arentfox.com

Re:  *Gamza-Machado De Souza v. Planned Parenthood Federation of America, Inc., et al.*
Case No. 1:21-cv-05553-LGS
Letter on Plaintiff's Medical Authorizations

Dear Mr. Altaras:

This Firm represents Defendants Planned Parenthood Federation of America, Inc. ("PPFA"), Rachel Moreno, and George Walker (collectively, "Defendants") in the above-referenced matter. We write to request that Plaintiff Ilana Gamza-Machado De Souza ("Plaintiff") immediately issue supplemental medical authorizations.

On November 30, 2021, Plaintiff issued medical release authorizations in connection with the providers she identified in her November 3, 2021 responses to Defendants' Interrogatories. (*See* Response No. 6). Additionally, Plaintiff produced a number of pages of medical records in her First Document Production. (*See* P000239 – P000259).

In reviewing the existing medical records from Margo E. Rappaport and Jersey Medical Care, it is clear that Plaintiff has seen—or is currently seeing—additional medical providers that were not disclosed in her original Interrogatory Responses, and for which she has not provided medical release authorizations. It appears that Plaintiff saw these providers in connection with psychological and/or physical conditions that are directly relevant to her damage claims in the Amended Complaint.

Accordingly, Defendants hereby demand medical release authorizations in connection with the following providers and treatments:

- During her May 5, 2020 session with Margo E. Rappaport, the provider's notes say: "[Plaintiff] had severe post partum depression starting 1/14/19 […] Pt consistently feels anxious, panic and on edge. While in active episode still unable to cope and only able to use the skills after the initial attack. Pt stated 'I want to be able to feel like myself again, to be able to be calm, not to be so sad and anxious. To be able to concentrate and focus.' Pt had seen psychiatrists for medication management. Dr. Dispoto (NP) Escitalopram and Clonazepam for depression and anxiety.'" **Plaintiff has not produced any information related to the referenced psychiatrists, nor Dr. Dispoto, nor any information about**

# Arent Fox

Letter on Plaintiff's Discovery Deficiencies
Page 2

which provider(s) prescribed her Escitalopram and Clonazepam. **Plaintiff must produce the identity of the relevant provider(s) and issue full medical authorizations.**

- During her November 20, 2020 visit with Jersey Medical Care, the provider's notes say: "[S]he was taking Clonazepam for 3 months but was feeling nausea and lightheadedness and stopped, she started taking Vistaril, states she still takes Clonazepam occasionally, she finds that around 5am in the morning she gets anxious and nausea with racing thoughts, these symptoms subside in the afternoon, she was also prescribed Zoloft but it made her feel "fuzzy" so she stopped, prior to giving birth she was rarely anxious, she was fearless and traveled allot and was not scared of little things, now she panics due to little things, clonazepam makes her feel better[.]" **Plaintiff has not produced any information about what provider(s) prescribed her Clonazepam and Vistaril, nor has she produced any information reflecting the apparent changes in her dosage during this period. Plaintiff must produce the identity of the relevant provider(s) and issue full medical authorizations.**

- During her July 15, 2021 visit with Jersey Medical Care, the provider's notes say: "[S]he saw her GP and was placed on buspirone" (another anxiety medication). **Plaintiff has not produced any information relating to her general practitioner or this prescription. Plaintiff must produce the identity of the relevant provider(s) and issue full medical authorizations.**

Given the impending discovery deadlines in this matter, we ask that you have your client execute completed medical authorizations for the above-referenced providers no later than **February 1, 2022**.

Should you wish to discuss these matters, we are available for a call.

Best regards,

*/s/ Nancy Puleo*  
Nancy Puleo

*/s/ Brian Farkas*  
Brian Farkas

# Exhibit B

Defendants' February 23, 2022 Letter to Plaintiff's Counsel
Reiterating Medical Release Authorization Deficiencies

# Arent Fox

**Arent Fox LLP** / Attorneys at Law
Boston / Los Angeles / New York / San Francisco / Washington, DC

February 23, 2022

**Brian Farkas**
Associate
212.492.3297 DIRECT
212.484.3990 FAX
brian.farkas@arentfox.com

VIA EMAIL
Daniel J. Altaras, Esq.
The Derek Smith Law Group
One Penn Plaza, Suite 4905
New York, New York 10119
(908) 414-4235
dan@dereksmithlaw.com

**Nancy Puleo**
Partner
617.973.6124 DIRECT
617.367.2315 FAX
nancy.puleo@arentfox.com

Re: *Gamza-Machado De Souza v. Planned Parenthood Federation of America, Inc., et al.*
Case No. 1:21-cv-05553-LGS
Outstanding Discovery Disputes

Dear Mr. Altaras:

As you know, this Firm represents Defendants Planned Parenthood Federation of America, Inc. ("PPFA"), Rachel Moreno, and George Walker (collectively, "Defendants") in the above-referenced matter. We write to follow up on our meet-and-confer conversations over the course of last several weeks regarding outstanding discovery.

During our conversations, each side discussed their unresolved document demands, deficiency letters, and potential compromises for narrowed versions of their respective demands. Following those conversations, both sides appear to have general agreement on the scope of what remains outstanding. The purpose of this letter is to memorialize Defendants' responses to Plaintiff's demands, as well as reiterate narrowed versions of Defendants' remaining demands on Plaintiff.

**Background**

On September 30, 2021, Defendants served our First Set of Document Demands and First Set of Interrogatories on Plaintiff. Plaintiff served her Responses and Objections, as well as her first document production, on November 2, 2021. That production is Bates Stamped P000001-P000263. On January 21, 2022, Plaintiff produced one additional document that is Bates Stamped P000264-P000265.

On September 30, 2021, Plaintiff served her First Set of Document Demands and First Set of Interrogatories on Defendants. Defendants served their Responses and Objections on November 2, 2021, along with their First Document Production. Since then, we have made three additional productions dated December 3, 2021, February 10, 2022 and February 17, 2022. Collectively, these four productions are Bates Stamped DEFENDANTS00001-DEFENDANTS002893.

# Arent Fox

The parties have also exchanged deficiency letters. Defendants sent Plaintiff a deficiency letter regarding Plaintiff's responses and production on December 17, 2021. Defendants then sent a second deficiency letter specifically related to Plaintiff's medical records on January 27, 2022. Plaintiff sent Defendants a deficiency letter to Defendants on January 21, 2022, as well as a response to Defendants' December 17, 2021 letter.

The parties have since engaged in several meet-and-confer discussions regarding the scope of the outstanding productions and potential compromises in the interests of efficiency.

**Defendants' Responses to Plaintiff's Remaining Demands**

As an initial matter, Plaintiff's Deficiency Letter asks Defendants to confirm whether they are withholding documents with respect to Plaintiff's Demands 4, 5, 6, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, 19, 23, 24, 25, 28, 32, and 36. Defendants confirm that they are not, and have conducted reasonable searches for responsive and non-privileged documents. The vast majority of these documents have already been produced to Plaintiff through the productions on November 2, 2021, December 3, 2021, February 10, 2022, and February 17, 2022.[1]

Defendants anticipate making a Fifth Production of documents in short order following this letter pursuant to our meet-and-confers (as described below). If further responsive documents are located, of course, we would produce those to Plaintiff pursuant to Fed. R. Civ. P. 26.

Subject to reasonable redactions[2] of confidential employee information, and without waiving their previously-asserted objections, Defendants agree to produce documents in the following categories:

1. **Documents Related to Employee Resource Groups:** In our Fourth Document Production, dated February 17, 2022, Defendants produced documents in their possession, custody and control related to Employee Resource Groups ("ERGs") such as internal charters, guides, budgets, and governing documents. These documents are directed at Plaintiff's Demands 16, 17, 18, 19, and 20.

2. **Medical Records:** In our Fourth Document Production (in addition to the documents demanded by Plaintiff), Defendants produced documents that our Firm has received from Plaintiff's medical providers (Margo E. Rappaport and Jersey Medical Care) pursuant to her medical release authorizations. To the extent that we receive additional documents from providers pursuant to medical release authorizations, we will produce those on an ongoing basis.

---

[1] You will recall that Defendants' Third Document Production was initially produced on February 9, 2022, but then reproduced the following day to correct a typographical error in the Bates numbering.

[2] As you know, Defendants have asked that Plaintiff agree to enter a stipulated protective order to permit the exchange of confidential information. Plaintiff declined to do so, citing a policy of The Derek Smith Law Group. Accordingly, we discussed over the phone a compromise whereby Defendants would produce sensitive documents with certain confidential information redacted.

Arent Fox

Page 3

3. **Documents Related to Performance Evaluations:** Plaintiff's Demand 10 seeks "PERFORMANCE EVALUATIONS OR JOB REVIEWS of all other employees in PLAINTIFF's position" as well as "portions of said employees' personnel files which relate in any way to any disciplinary action as a result of such performance and current employment status." As we discussed during our meet-and-confer, Defendants do not believe that there were "other employees in PLAINTIFF's position" within the meaning of this Demand. However, putting aside that issue, PPFA states that as an organization, it does not conduct or maintain performance evaluations and/or job reviews. Instead, it engages in "continuous performance management" whereby managers are encouraged to discuss job performance with employees on an ongoing basis. This process was discussed confirmed several depositions thus far.

4. **Documents Related to Prior Complaints of Discrimination:** Your January 21, 2022 notes that Plaintiff seeks documents related to "complaints of discrimination, harassment, and retaliation against the Defendants," citing to Plaintiff's Demands 21, 22, 26, 34, 35, and 3.[3] As you know, we have already stated that there are no responsive documents in connection with Defendants George Walker or Rachel Moreno. With respect to PPFA, Defendants objected to these Demands on multiple grounds, including their chronological scope, ambiguity, and lack of relevance to this litigation. However, as a compromise, Defendant agree to produce complaints of race or religious discrimination and retaliation for the two-year period between January 1, 2019 and December 31, 2020 and the present. These documents would be included in Defendants' Fifth Document Production.

5. **PPFA's Financial Information:** Plaintiff initially requested several years of tax returns, financial statements, and balance sheets for PPFA. Defendants objected to the breadth and relevance of these requests. However, as a compromise, Defendants will produce PPFA's publicly available IRS Form 990 filing, dated March 5, 2021, which covers the year ending June 30, 2020. This document shows basic assets of the organization. This document is directed at Plaintiff's Demands 38 and 39, and would be included in Defendants' Fifth Document Production.

6. **Additional Emails:** Beyond the many emails already provided, Defendants believe that their Fifth Document Production will include additional email correspondence responsive to one or more of Plaintiff's demands. We anticipate that this production will be significantly smaller than our prior production of emails and we are manually reviewing potentially responsive documents.

---

[3] We note that this language is somewhat different from the text of Plaintiff's actual Demands, but we respond generally to this category of materials in the interests of efficiency. We further note that this category of documents also implicates Plaintiff's Interrogatories 10 and 13, 14, 15, and 16, which are mentioned in your January 21, 2022 letter.

**Arent Fox**

**Defendants' Compromise Demands to Plaintiff:**

As noted during our meet-and-confers, and during Plaintiff's deposition, Defendants renew their demands for the following documents and information, which represents targeted and compromised requests in the spirit of our good faith efforts to resolve discovery disputes:

1. **Mental Health Provider Authorizations:** Defendants renew their demand for medical release authorizations for Plaintiff's mental health providers (whether psychiatrists, general practitioners, or therapists of any kind) for the period of October 1, 2017 through April 30, 2020. We explained the nature of this demand in our January 27, 2022 letter on this subject. The medical records that have currently been produced cover only the period beginning in May 2020. (*See* P000239 – P000259). Yet these records indicate that Plaintiff was being actively treated by additional medical provider(s) both before and during her tenure at PPFA. Plaintiff previously provided medical authorizations for the period of time of October 1, 2017 to the present for Jersey Medical Care, Margo Rappaport, Nikki Steidle, and Patrick Dispoto. However, none of those providers appear to have actually treated Plaintiff before May 2020. In short, Plaintiff's mental health treatment between October 1, 2017 and April 30, 2020 is directly related to the allegations in the Amended Complaint (e.g., anxiety, depression, etc.). Defendants are entitled to medical release authorizations in connection with these provider(s).

2. **Authorization for Prescriber of Clonazepam and Vistaril:** Defendants renew their demand for medical release authorizations for the medical providers who prescribed Plaintiff "Clonazepam and Vistaril" as referenced in the patient notes from her November 20, 2020 visit with Jersey Medical Care. As noted above, and discussed in our January 27, 2022 letter, it appears that neither Margo E. Rappaport nor Jersey Medical Care prescribed these medications to Plaintiff. Again, these medications appear to be treatments for conditions directly related to the claims in the Amended Complaint (e.g., anxiety, depression, etc.). Defendants are entitled to medical release authorizations in connection with these provider(s).

3. **Authorization for Prescriber of Buspirone:** Defendants renew their demand for medical release authorizations for the medical providers who prescribed Plaintiff "Buspirone" as referenced in the patient notes from her July 15, 2021 visit with Jersey Medical Care. As noted above, and discussed in our January 27, 2022 letter, it appears that neither Margo E. Rappaport nor Jersey Medical Care prescribed this medication to Plaintiff. Again, this medication appears to be a treatment for conditions directly related to the claims in the Amended Complaint (e.g., anxiety, depression, etc.). Defendants are entitled to medical release authorizations in connection with these provider(s).[4]

4. **Plaintiff's Social Media:** Defendants asserted several document demands and interrogatories related to Plaintiff's social media accounts. Defendants agree to narrow these demands to social media posts that Plaintiff has made between October 1, 2019 and

---

[4] It may well be that items 1, 2 and 3 all relate to the same provider. However, it is unclear on the face of the existing records whether that is the case.

**Arent Fox**

Page 5

the present that relate to: (1) PPFA; (2) the allegations in the Amended Complaint; (3) George Walker to Rachel Moreno; or (4) anti-Semitism or racism. This narrowed demand includes, *inter alia*, textual, pictorial, or video posts made to any social media site (e.g., Facebook, Twitter, Instagram, TikTok, Blogger, Tumblr, etc.) through any account that Plaintiff controls. To the extent that no such post exists, or have been deleted, Plaintiff must so state.

5. **Plaintiff's Résumés and Job Applications:** Defendants requested Plaintiff's current résumé, and all prior versions thereof, from October 1, 2019 and the present. Defendants also requested copies of her job applications following her termination on November 30, 2020. Given that this is an employment-related litigation, and Plaintiff's efforts to mitigate damages are squarely at issue, these requests are wholly appropriate. We renew them here.

6. **Wage Records:** Plaintiff has not provided a full accounting of compensation earned since leaving PPFA. In her response to Defendant's Interrogatory 13, Plaintiff identified only two employers, and stated that she has worked at RocketAir, LLC since February 2021 and iCrossing, Inc. since July 2021. During her deposition on February 18, 2022, she testified that she now also works for Publicis. The Court previously ordered that Plaintiff produce "documents reflecting wages paid by her two current employers over the course of her employment" by January 26, 2022 – though this Order was issued prior to Defendants' learning about Publicis as a third employer. (Dkt. 42). Despite the Court's clear order, Plaintiff's production remains incomplete: In Plaintiff's first document production on November 2, 2021, there were only two wage statements included. One reflected payment from RocketAir, LLC for the period between August 16, 2021 and August 31, 2021 (P000237) and the other reflected payment from iCrossing, Inc. for the period between August 22, 2021 and September 4, 2021 (P000238). Then, on January 21, 2022, Plaintiff produced one additional document that is Bates Stamped P000264-P000265 reflecting another payment from RocketAir, LLC for the period between December 1, 2021 and December 15, 2021. In sum, Plaintiff must produce full and complete compensation records, including all IRS Forms W-2 and 1099 for tax years 2020 and 2021 and wage and/or payroll statements received to date in 2022.

7. **Plaintiff's Personal Email Accounts:** During Plaintiff's deposition, Plaintiff admitted that she regularly forwarded PPFA-related emails to her personal Yahoo email accounts: Igamza@Yahoo.com and Ilana_Machado@Yahoo.com. No such emails were produced, even though they are plainly relevant to the allegations in the Amended Complaint. Accordingly, as we stated on the record during Plaintiff's deposition, Defendants request that Plaintiff immediately conduct a thorough search of her email accounts for any and all documents responsive to Defendants' September 30, 2021 First Set of Document Demands.

8. **Plaintiff's Text Messages:** Similarly, Defendants request that Plaintiff immediately perform a thorough search of her text messages for any communications responsive to Defendants' September 30, 2021 First Set of Document Demands. Plaintiff's communications with Ms. Moreno – as disclosed in Defendants' Third Document Production – show that she communicated with PPFA employees through her cell phone.

**Arent Fox**

But it is unclear whether she searched her phone for responsive text messages. Plaintiff must do so; if there are no such messages, she must so state.

### Status of Depositions

By February 22, 2022, the parties will have deposed five witnesses: the Plaintiff plus four witnesses from the Defendants (Caren Spruch, Rachel Moreno, Sherylle Bates, and Charise Beckett). Given the challenges of scheduling the various witnesses—several of whom no longer work for PPFA—we agreed during our meet-and-confer to consider dates during the roughly two week-period after the close of fact discovery to schedule these remaining witnesses.

Three more witnesses are already scheduled: Ciara Walton (February 28, 2022 at 11 a.m.), PPFA's 30(b)(6) (March 8, 2022 at 12:30 p.m.), and George Walker (March 10, 2022 at 9:30 a.m.). We are still working to confirm one final witness, Maxine Squire, and provided you with two potential dates to depose her through our February 23, 2022 email.

Lastly, Defendants have reserved their rights to depose Plaintiff for an additional 2-3 hours, which we reiterate here.

Once these dates are secured, we agree in principle to submit a joint letter to Judge Schofield before the close of fact discovery on February 25, 2022 to ask that discovery be extended for a three-week period. This would permit time to finish these depositions, as well as finalize any remaining document productions by both sides described herein.

### Plaintiff's Rule 35 Examination

On February 4, 2022, the Court approved Defendants' application to conduct a Rule 35 examination on Plaintiff. (Dkt. 47). Dr. Larry S. Kirstein, MD will conduct the examination. As discussed during our meet-and-confer, we agree that this examination will occur virtually (i.e., over Zoom) at a mutually convenient time for Plaintiff and Dr. Kirstein. As discussed above, Defendants seek full production of Plaintiff's medical records before this examination occurs. We believe that these records are necessary for both the Rule 35 examination as well as expert discovery.

***

We believe that the parties are engaging in productive discussions to streamline and finalize discovery at this stage. Should you wish to discuss these matters in greater detail, we are available for a call on February 24, 2022.

Best regards,

*/s/ Nancy Puleo*                                                        */s/ Brian Farkas*
Nancy Puleo                                                                  Brian Farkas