```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
ILANA GAMZA-MACHADO DE SOUZA,                               :
                                        Plaintiff,          :       21 Civ. 5553 (LGS)
                                                            :
                    -against-                               :       OPINION AND ORDER
                                                            :
PLANNED PARENTHOOD FEDERATION OF                            :
AMERICA, INC., et al.,                                      :
                                        Defendants.         :
------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

Plaintiff Ilana Gamza-Machado de Souza brings this action against Defendants Planned Parenthood Federation of America, Inc. ("Planned Parenthood"), Rachel Moreno and George Walker. The Amended Complaint (the "Complaint") alleges discrimination based on race and religion, a hostile work environment, retaliation and unlawful termination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), 42 U.S.C. § 1981, the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"), the New York City Human Rights Law, N.Y.C. Admin. Code Title 8 ("NYCHRL"). Plaintiff seeks both compensatory and punitive damages. Defendants seek partial dismissal under Federal Rule of Civil Procedure 12(b)(6), specifically the retaliation claims under Title VII, the NYSHRL and NYCHRL and the request for punitive damages. For the reasons below, Defendants' motion is denied.

I.     BACKGROUND

The summary below is limited to facts relevant to the retaliation claim. They are taken from the Complaint, are assumed to be true only for purposes of this motion, and are construed

in the light most favorable to Plaintiff as the non-moving party.  *See Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019).

Plaintiff, who is a Jewish woman, was an employee of Planned Parenthood.  While at Planned Parenthood, she had been told by her supervisor that she "does not want an old Jewish woman running a multicultural department" and by another director-level employee that "there were too many white Jewish Chief Executive Officers in positions of power, and it [was] time to get them out."  Around June 22, 2020, Plaintiff asked Planned Parenthood's Employee Resource Group ("ERG") Coordinator if there was a Jewish ERG and if she could pursue creating one.  Three days later, the ERG Coordinator emailed Plaintiff that she was "good to go," and Plaintiff solicited more than twenty employees for the ERG.  After Plaintiff found out that the ERG Coordinator had left the company, Plaintiff emailed Defendant Walker -- the Vice President of Diversity, Equity, and Inclusion at Planned Parenthood -- to discuss next steps.  Walker is an employee with supervisory authority to hire and fire Defendant.  Around July 31, 2020, Walker emailed Plaintiff that the ERG had not been approved and that he needed to make sure that "the identity markers [were] critical to the business."

On August 11, 2020, Plaintiff and Walker had a video conference, during which Walker expressed concerns about having a Jewish ERG because he did not want a religious ERG and that a Jewish ERG was not correlated closely enough with Planned Parenthood's organizational goals.  Plaintiff followed up with Walker after this meeting, emphasizing that Jewish people are a race/ethnic group and not just a religious group, and submitted an updated charter for the ERG.  Walker still expressed concerns.  Around September 3, 2020, Plaintiff responded that the other ERG's mission statements were similar to the proposed charter for the Jewish ERG, and that they did not seem to align with Planned Parenthood's organizational goals.

Around September 8, 2020, Squires -- who was working with Plaintiff for the creation of the ERG -- spoke to Walker. During the conversation, Walker told Squires that Orthodox Jewish women were "birthing factories" and that the role of a Jewish ERG should be about educating Orthodox Jewish women about birth control.

Around October 20, 2020, Plaintiff emailed Walker an updated proposed charter in addition to expressing her concerns about "antisemitism/micro-ag[g]ressions towards Jewish folks at PPFA." Walker responded the next day explaining he needed to make sure a Jewish ERG "meets with the business case."

Around October 28, 2020, Plaintiff reiterated her concerns about "microaggressions towards the Jewish folks at Planned Parenthood." Walker responded that he wanted "to make sure the charter is set up air tight." Walker advised that part of the reason the Jewish ERG was not getting approved was because Plaintiff had not picked out an advisory board, even though Walker previously had told her not to worry about that step. On November 30, 2020, Plaintiff was terminated.

## II.   LEGAL STANDARD

### A.  Rule 12(b)(6)

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party but does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (internal quotation marks omitted). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[] [plaintiff's] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021). To survive dismissal, "plaintiffs must provide the grounds upon which [their] claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019) (alteration in original) (internal quotation marks omitted).

**III.    DISCUSSION**

    **A. Retaliation Claims**

        **1. Elements of a Retaliation Claim**

Federal law forbids discrimination against an employee for having "opposed any practice made an unlawful employment practice by [42 U.S.C. § 2000e]" or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [42 U.S.C. § 2000e]." 42 U.S.C. § 2000e-3(a). Similar claims for retaliation can be brought under the NYSHRL[1] and NYCHRL.[2]

---

[1] The NYSHRL provides: "It shall be an unlawful discriminatory practice . . . For any employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article." N.Y. Exec. Law § 296(1)(e).

[2] The NYCHRL states: "Retaliation. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter . . . . The retaliation or discrimination complained of under this subdivision need not result in an ultimate action with respect to employment, . . . or in a materially adverse change in the terms and conditions of employment, . . . provided, however, that the retaliatory or

4

To survive a motion to dismiss a Title VII or NYSHRL retaliation claim, "the plaintiff must plausibly allege that: (1) defendants discriminated -- or took an adverse employment action -- against [her], (2) because [s]he has opposed any unlawful employment practice." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018); *accord Corradino v. Liquidnet Holdings Inc.*, No. 19 Civ. 10434, 2021 WL 2853362, at *6 (S.D.N.Y. July 8, 2021).  The requirements for pleading a retaliation claim are sometimes stated as four elements: (1) plaintiff's participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.  *See Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015); *Buchanan v. City of New York*, 556 F. Supp. 3d 346, 365 (S.D.N.Y. Aug. 23, 2021).  These elements are analyzed the same under Title VII and the NYSHRL.  *See Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843-44 (2d Cir. 2013); *Buchanan*, 556 F. Supp. 3d at 365.

The NYCHRL is intended to be more lenient than its federal and state counterparts. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).  To satisfy the "protected activity" element under the NYCHRL, "the plaintiff must show that she took an action opposing her employer's discrimination." *Id*. at 112; *accord Brown v. Montefiore Med. Ctr.*, No. 19 Civ. 11474, 2021 WL 1163797, at *11 (S.D.N.Y. Mar. 25, 2021).  To satisfy the "adverse employment action" element under the NYCHRL, a plaintiff need not allege a "materially adverse change in the terms and conditions of employment," only a retaliatory act that is "likely to deter a person from engaging in protected activity."  N.Y.C. Admin. Code § 8-107(7); *see also Mihalik*, 715 F.3d at 112.  To satisfy the causation element under the NYCHRL,

---

discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity." N.Y.C. Admin. Code § 8-107(7).

a plaintiff must "plead facts giving rise to an inference of a causal connection between the plaintiff's protected activity and an adverse employment action." *Brightman v. Physician Affiliate Grp. of N.Y., P.C.*, No. 20 Civ. 4290, 2021 WL 1999466, at *10 (S.D.N.Y. May 19, 2021); *see also Hamburg v. N.Y. Univ. Sch. of Med.*, 155 62 N.Y.S.3d 26, 32 (1st Dep't 2017) (explaining that NYCHRL must be analyzed under the "mixed motive" analysis); *Sanderson-Burgess v. City of New York*, 102 N.Y.S.3d 678, 678 (2d Dep't 2019) (stating the same about NYCHRL analysis).

Because the NYCHRL is less demanding of a claimant, it "requires an independent analysis." *Mihalik*, 715 F.3d at 109. Here, where the Complaint is sufficient to state a retaliation claim under federal and state law, it necessarily also states a claim under the NYCHRL. *See, e.g., Deveaux v. Skechers USA, Inc.*, No. 19 Civ. 9734, 2020 WL 1812741, at *7 (S.D.N.Y. Apr. 9, 2020) (holding that because plaintiff's retaliation claims met the Title VII standard and therefore also satisfied the NYCHRL standard).

### 1. Protected Activity

Protected activity under Title VII includes "informal protests of discriminatory employment practices" such as "making complaints to management [or] protesting against discrimination by industry or by society in general." *Littlejohn v. City of New York*, 795 F.3d 297, 317 (2d Cir. 2015). "[W]hen an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication *virtually always* constitutes the employee's *opposition* to the activity." *Id.* at 317 (emphasis in original) (quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009)); *accord Reyes v. Vill. of Spring Valley*, No. 20 Civ. 1883, 2021 WL 4067134, at *3 (S.D.N.Y. Sept. 7, 2021); *see, e.g., Hubbard v. Total Commc'ns, Inc.*, 347 F. App'x 679, 681 (2d Cir. 2009)

a plaintiff must "plead facts giving rise to an inference of a causal connection between the plaintiff's protected activity and an adverse employment action." *Brightman v. Physician Affiliate Grp. of N.Y., P.C.*, No. 20 Civ. 4290, 2021 WL 1999466, at *10 (S.D.N.Y. May 19, 2021); *see also Hamburg v. N.Y. Univ. Sch. of Med.*, 155 62 N.Y.S.3d 26, 32 (1st Dep't 2017) (explaining that NYCHRL must be analyzed under the "mixed motive" analysis); *Sanderson-Burgess v. City of New York*, 102 N.Y.S.3d 678, 678 (2d Dep't 2019) (stating the same about NYCHRL analysis).

Because the NYCHRL is less demanding of a claimant, it "requires an independent analysis." *Mihalik*, 715 F.3d at 109. Here, where the Complaint is sufficient to state a retaliation claim under federal and state law, it necessarily also states a claim under the NYCHRL. *See, e.g., Deveaux v. Skechers USA, Inc.*, No. 19 Civ. 9734, 2020 WL 1812741, at *7 (S.D.N.Y. Apr. 9, 2020) (holding that because plaintiff's retaliation claims met the Title VII standard and therefore also satisfied the NYCHRL standard).

### 1. Protected Activity

Protected activity under Title VII includes "informal protests of discriminatory employment practices" such as "making complaints to management [or] protesting against discrimination by industry or by society in general." *Littlejohn v. City of New York*, 795 F.3d 297, 317 (2d Cir. 2015). "[W]hen an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication *virtually always* constitutes the employee's *opposition* to the activity." *Id.* at 317 (emphasis in original) (quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009)); *accord Reyes v. Vill. of Spring Valley*, No. 20 Civ. 1883, 2021 WL 4067134, at *3 (S.D.N.Y. Sept. 7, 2021); *see, e.g., Hubbard v. Total Commc'ns, Inc.*, 347 F. App'x 679, 681 (2d Cir. 2009)

(summary order) (holding that an employee's email to her supervisor constituted informal protest actionable under Title VII). The complaint needs to be "sufficiently specific to make it clear that the employee is complaining about conduct prohibited by Title VII." *Risco v. McHugh*, 868 F. Supp. 2d 75, 110 (S.D.N.Y. 2012); *accord Velazquez v. Yoh Servs., LLC*, 803 F. App'x 515, 517 (2d Cir. 2020) (summary order). "The onus is on the speaker to clarify to the employer that [she] is complaining of unfair treatment due to [her] membership in a protected class," not just unfair treatment generally. *Wilkins v. United Parcel Serv., Inc.*, No. 19 Civ. 8180, 2022 WL 597431, at *11 (S.D.N.Y. Feb. 28, 2022). The plaintiff must have only "a good faith, reasonable belief" that she was opposing an employment practice unlawful under Title VII. *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593-94 (2d Cir. 1988); *Velazquez*, 803 F. App'x at 517.

The Complaint plausibly alleges at least two instances of protected activity: the two emails to Walker, the Vice President of Diversity, Equity, and Inclusion, on October 20, 2020, and on October 28, 2020, reporting microaggressions towards Jewish people at Planned Parenthood. The Complaint alleges that Walker held supervisory authority over Plaintiff. These emails raising her concerns of "antisemitism/micro-ag[g]ressions towards Jewish folks at PPFA" and "microaggressions toward the Jewish folks at Planned Parenthood" constituted Plaintiff's "informal protest" as well as advocacy for the creation of a Jewish ERG to address that discrimination.

Defendants' arguments that Plaintiff did not engage in protected activity are unpersuasive. That her complaints about "microaggressions" toward Jewish people were made in the context of advocating for a Jewish ERG is not disqualifying. She apparently advocated for the ERG to remedy what she believed to be discriminatory conduct toward Jewish people at

Planned Parenthood. The law does not require that the complaint be "independent" of advocacy to help address the discrimination, nor that the complaint be "filed" as Defendant implies. Similarly, and contrary to Defendants' suggestions, the law does not require that the conduct that is the subject of the complaint have been directed toward the plaintiff or have been actually unlawful. All that is required is Plaintiff's "good faith, reasonable" belief that the employer was engaged in an unlawful and discriminatory employment practice. *See Manoharan*, 842 F.2d at 593-94. Construing the Complaint in favor of Plaintiff as required, it alleges sufficient facts to allege that she participated in a protected activity.

   2. **Adverse Employment Action**

An adverse action for the purposes of a Title VII retaliation claim includes "any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (internal quotation marks omitted) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). The standard applies to the NYSHRL and NYCHRL claims. *LeGrand v. Walmart Stores E., LP*, 779 F. App'x 79 (2d. Cir 2019) (summary order); *Mihalik*, 715 F.3d at 112 (NYCHRL). Termination of employment is indisputably an adverse employment action. *See, e.g.*, *Shultz v. Congregation Shearith Israel of N.Y.*, 867 F.3d 298, 304 (2d Cir. 2017). There is also no dispute that Plaintiff was terminated from her position on November 30, 2020.

   3. **Causal Connection**

Under Title VII, "for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Vega*, 801 F.3d at 90. "'[B]ut-for' causation does not[, however,] require proof that retaliation was the only cause of the employer's action, but only that the

8

adverse action would not have occurred in the absence of the retaliatory motive." *Id.* (alteration in original) (quoting *Kwan,* 737 F.3d at 846). This causal connection can either be shown directly or "indirectly, by showing that the protected activity was followed closely by discriminatory treatment." *Littlejohn*, 795 F.3d at 319; *see also Vega*, 801 F.3d at 90-91. The Second Circuit "has not imposed a strict time limitation when a retaliation claim relies exclusively on temporal proximity." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 104 (2d Cir. 2020).

The Complaint plausibly alleges facts showing "but-for" causation. There is a close temporal connection of approximately one month between Plaintiff's protected activity and the adverse employment action. Plaintiff sent emails complaining of microaggressions against Jewish people to Walker on October 20 and 28, 2020. Her employment was terminated on November 30, 2020.

Defendants' argument that this temporal proximity should be calculated from Plaintiff's initial discussions about creating the ERG is unpersuasive. Rather, the reverse is true both as a matter of precedent and common sense; even if a plaintiff's first complaint may not have prompted retaliation, the last complaint or cumulative effect of multiple complaints may well have. *See, e.g., Ulrich v. Soft Drink, Brewery Workers & Delivery Emps., Indus. Emps., Warehousemen, Helpers & Miscellaneous Workers, Greater N.Y. & Vicinity, Loc. Union No. 812*, 425 F. Supp. 3d 234, 241 (S.D.N.Y. 2019) (utilizing the "latest possible moment in which [plaintiff] engaged in protected activity" to calculate causal connection for a retaliation claim); *Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d 379, 392-93 (S.D.N.Y. Sept. 30, 2019) (calculating temporal proximity based on the employee's "last informal complaint and the commencement of the disciplinary proceedings"). The Complaint sufficiently and plausibly

pleads the causation element of a retaliation claim under Title VII, the NYSHRL and the NYCHRL.

### B. Demand for Punitive Damages

Punitive damages are available under Title VII and the NYCHRL.  42 U.S.C. § 1981a(b)(1); N.Y.C. Admin. Code § 8-502(a).  Title VII requires a showing of "malice" or "reckless indifference" to warrant punitive damages, *Mugavero v. Arms Acres, Inc.*, 680 F. Supp. 2d 544, 583 (S.D.N.Y. 2010), and the NYCHRL similarly requires a finding of "willful or wanton negligence, or recklessness . . .," *Chauca v. Abraham*, 885 F.3d 122, 124 (2d Cir. 2018) (applying New York law).  "[P]unitive damages are not a separate cause of action and, thus, courts generally find motions to strike punitive damages at the motion to dismiss stage to be premature."  *Bernardi v. N.Y. State Dep't of Corr.*, No. 19 Civ. 11867, 2021 WL 1999159, at *14 (S.D.N.Y. May 19, 2021).  The application to strike the demand for punitive damages is denied without prejudice to renewal after development of the factual record.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is DENIED.   The Clerk of Court is respectfully directed to close the motion at Docket Number 43.

Dated: June 7, 2022
        New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE