UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------- X
                          :

ILANA GAMZA-MACHADO DE SOUZA,    :
                     Plaintiff,    :

                          :        21 Civ. 5553 (LGS)
      -against-          :

                          :       __OPINION AND ORDER__

PLANNED PARENTHOOD FEDERATION    :
OF AMERICA, INC., et al.,          :
                  Defendants.  :
--------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Ilana Gamza-Machado de Souza brings this employment discrimination action

against Defendant Planned Parenthood Federation of America, Inc. ("PPFA") and Defendants

Rachel Moreno and George Walker (the "Individual Defendants").  Plaintiff alleges

discrimination on the basis of race and religion and retaliation in violation of Title VII of the

Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL")

and the New York City Human Rights Law ("NYCHRL"), as well as aiding and abetting under

the NYSHRL and NYCHRL, supervisor liability under the NYCHRL and race discrimination

under 42 U.S.C. § 1981.  Defendants move for summary judgment on all of Plaintiff's claims.

For the reasons below, Defendants' motion is granted in part and denied in part.

## I.    BACKGROUND

      The following undisputed facts are drawn from the parties' Rule 56.1 statements and

other submissions on this motion.  The facts are undisputed or based on record evidence drawing

all reasonable inferences in favor of Plaintiff as the non-moving party.  *See N.Y. State Teamsters*

*Conf. Pension & Ret. Fund v. C & S Wholesale Grocers, Inc.*, 24 F.4th 163, 170 (2d Cir. 2022).

In considering PPFA's motion for summary judgment, the Court is "required to accept all sworn

statements by [Plaintiff] as to matters on which she [is] competent to testify, including what she did, what she observed, and what she was told by company managers." *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 46 (2d Cir. 2019).  The Court also "must disregard all evidence favorable to [PPFA] that the jury is not required to believe," that is, "give credence to the evidence favoring [Plaintiff] as well as that evidence supporting [PPFA] that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000)).

### A.    Plaintiff's Experience at PPFA

PPFA is a tax-exempt 501(c)(3) corporation with a mission "[t]o provide comprehensive reproductive healthcare services, advocate for public policies which guarantee and ensure access to such services, and provide sex education to enhance understanding of human sexuality." From October 1, 2019, until November 30, 2020, Plaintiff was employed at-will by PPFA as a Senior Director in the Brand & Culture Department, within PPFA's broader Communications & Culture Division.  Between 2018 and 2021, Defendant Moreno worked at PPFA in the Brand & Culture Department as Vice President of Brand & Culture Strategy.  When Plaintiff applied to work at PPFA, she was interviewed by Moreno and others, who made a collective decision to hire Plaintiff.  As stated in Plaintiff's offer letter, Plaintiff reported directly to Moreno throughout her employment with PPFA.  Plaintiff's and Moreno's job duties included various aspects of PPFA's branding, marketing and communications.  Both Plaintiff and Moreno are Jewish.  Between 2018 and 2021, Defendant Walker was employed by PPFA as Vice President of Diversity, Equity and Inclusion ("DEI").

Plaintiff has identified a number of incidents that, in her view, demonstrate bias against her as a Jewish person, either in the form of overtly anti-Semitic comments or what she refers to as microaggressions.  In November 2019, Plaintiff and Moreno discussed PPFA's intention to

2

hire a new Director of Multicultural Brand Engagement.  Plaintiff asked why Caren Spruch, a Jewish woman employed in the same department, would not handle that new role.  In response, Moreno told Plaintiff that she "does not want an old Jewish woman running a multicultural department" and would like Spruch to be fired or forced to quit.  Plaintiff generally felt she was "bullied" by Moreno but does not recall any anti-Semitic remarks beyond the one about Spruch.

In January 2020, Nia Martin-Robinson, another PPFA employee, commented that there were too many white Jewish CEOs in positions of power and it was time to get them out.  In addition, Plaintiff was aware of a t-shirt produced by PPFA that proclaimed a commitment to fighting various forms of bigotry, including racism, but did not mention anti-Semitism.  Plaintiff also was aware of colleagues' complaints about being expected to work on Jewish holidays. Plaintiff could not recall a holiday when she was required to work, but PPFA scheduled an all-staff meeting on a day when many Jewish employees had taken time off for a holiday.

**B.      Plaintiff's Efforts to Create a Jewish ERG**

On June 22, 2020, Plaintiff contacted Ciara Walton, PPFA's then-Director of DEI, about the possibility of establishing an Employee Resource Group ("ERG") for Jewish people at PPFA (the "Jewish ERG").  ERGs are voluntary, employee-led groups of PPFA employees based on shared demographics or identities.  At PPFA, ERGs are distinct from "affinity groups;" the latter center around hobbies, activities or interests, rather than aspects of employees' identities.  Other ERGs at PPFA include the Latin/Latinx ERG, Asian American Pacific Islander ERG, Black Associates ERG, LGBTQIA+ Pride ERG and Young Professionals ERG.  The approval and administration of ERGs is overseen by PPFA's DEI Office, led by Walker.  The Director of DEI reports to Walker and is responsible for oversight and assisting in the creation of ERGs, among other duties.  Walton's successor in that role, Jennifer Baxi, testified that the goals of ERGs are to promote diversity, inclusion and belonging at PPFA for members of their constituency.  Each

approved ERG receives an annual budget, and some have used some of those funds for programming that addresses the experiences of their constituencies with issues of sexual and reproductive health, in keeping with PPFA's broader organizational mission. However, the mission statements of many ERGs focus on supporting members of their constituencies at PPFA, not on alignment with PPFA's external goals.[1]

When Plaintiff's request came in, Walton conferred with Walker and confirmed that Plaintiff's request to start a group for Jewish employees was a request for an ERG, not an affinity group. A few days later, Walton told Plaintiff to go ahead and begin the process of setting up a Jewish ERG. Plaintiff reached out to coworkers -- including Moreno -- to ensure that at least fifteen were interested in joining, as PPFA requires before approving an ERG. In mid-July 2020, Plaintiff advised Walton in writing that she had gathered the required fifteen employees, and then followed up several times after not receiving a response. On July 30, 2020, Walker told Plaintiff that Walton had left PPFA in July 2020. Walker assumed interim responsibilities of Director of DEI until October 2020, when Baxi was hired. When Walton left, she had no doubt that the ERG would be approved, though the process could take time.

---

[1] Defendants argue that Plaintiff has not proffered admissible evidence of the mission statements of other ERGs, because Plaintiff filed a composite exhibit containing unauthenticated versions of several such statements, some of which are dated. That argument is unavailing because "a district court deciding a summary judgment motion has broad discretion in choosing whether to admit evidence," and even may rely on inadmissible hearsay upon "a showing that admissible evidence will be available at trial." *Johnson v. N.Y.C. Health & Hosps. Corp.*, No. 21 Civ. 25, 2022 WL 2239439, at *4 (E.D.N.Y. June 22, 2022) (cleaned up). Plaintiff has shown that admissible evidence of these mission statements will be available to be authenticated at trial. Defendants' objections to the reliability of these documents goes to their weight, not admissibility, particularly at summary judgment where there is no risk of prejudicing a jury. This fact also is supported by Exhibit V to the Altaras Declaration, and Defendants do not challenge the admissibility of that document.

On July 30, 2020, Plaintiff emailed Walker to discuss next steps in setting up the ERG. Walker responded the next day asking to set up a meeting. Walker explained that ERGs were not automatically "approved" and he would "want to make sure the identity markers are also critical to the business." At a meeting with Plaintiff on August 11, 2020, Walker expressed concerns about starting a religion-based ERG -- a first for PPFA at the time -- particularly "at a time when there was a lot of racial unrest." In response, Plaintiff told Walker that being Jewish is also a racial and ethnic identity. At the same meeting, Walker expressed concern that the Jewish ERG's mission might not relate closely enough to PPFA's broader mission around sexual and reproductive healthcare. During that discussion, Walker suggested to Plaintiff that "the Orthodox community is a good opportunity to educate about birth control."

On August 17, 2020, Plaintiff sent Walker additional research concerning the ethnic aspect of Jewish identity and health disparities affecting Jewish people and stating that the Jewish ERG would focus on ethnicity. On August 21, 2020, Walker responded, stating that he was "still not sure in the objectives [Plaintiff] make[s] the case for an ERG, although this is better." Walker stated that the "ethnicity and identity" aspect of the group did not come through in the charter and suggested that Plaintiff clarify "issues about race in the community."

Maxine Squires, another Jewish PPFA employee working with Plaintiff on the ERG, asked a colleague of Walker's to send examples of other ERG's charter documents. After reviewing a sampling of those documents, Plaintiff replied on September 3, 2020, noting that other groups' charters tended to focus on promoting diversity and inclusion at PPFA, rather than broader issues of sexual and reproductive health and ethnicity. Plaintiff stated that, based on her review of those documents, she believed they had made the case for the Jewish ERG and asked what was left to do to secure approval. Plaintiff expressed a desire to get the ERG up and

running before the upcoming Jewish holidays.  Plaintiff did not receive a response to that email for several weeks.

On September 4, 2020, Squires followed up again, noting that there had been a recent rise in anti-Semitism, and pushing for approval of the Jewish ERG before the upcoming holidays.  At a meeting on September 8, 2020, Walker responded to what he perceived as Squires's insinuation that he was making decisions about ERGs based on a "ranking of oppressions."  Walker also continued to push Squires on the need for the ERG's mission to be tied to PPFA's broader sexual and reproductive health mission.  Walker repeated something a friend had said about Orthodox women being "birthing factories," and again suggested that the ERG could focus on educating Orthodox women about birth control.  Squires was offended by this comment and later relayed it to Plaintiff, though Squires testified that she perceived it as coming from a place of ignorance rather than anti-Semitism.  Walker later admitted that he should not have made that comment.

On October 20, 2020, Plaintiff followed up with Walker again, noting her disappointment that the ERG had not been set up before the Jewish high holidays.  Plaintiff stated that others had expressed interest in the ERG as an opportunity to discuss anti-Semitism and microaggressions towards Jewish people at PPFA.  On October 21, 2020, Walker reiterated the need for a "business case" for the ERG and suggested that without making such a case, Plaintiff could start an affinity group.  After both Plaintiff and Squires followed up yet again about the need to address anti-Semitism and microaggressions, Walker responded on October 29, 2020, that the ERG would be approved, though formal approval was still in process.  On November 4, 2020, Plaintiff and Walker had another meeting, at which Walker explained that the Jewish ERG still had not been approved at least in part because they still needed to find a leadership team, and

Walker reiterated his concern about being seen to be "ranking oppressions."  Walker admitted

that having a leadership team in place generally is not a prerequisite to approval of an ERG.  On

November 18, 2020, Plaintiff and Squires followed up about finding an executive sponsor, but

shortly thereafter Plaintiff was fired, as discussed below, so her involvement in the process

ended.

Plaintiff's emails in October 2020 are the only instances of Plaintiff reporting perceived

anti-Semitism or microaggressions to her superiors.  Aside from the issues described above,

Plaintiff does not recall other instances of anti-Semitism or microaggressions while at PPFA, and

no other witness has testified to any.

### C.    Plaintiff's Job Performance and Firing

Early on in Plaintiff's tenure at PPFA, Moreno praised the quality of Plaintiff's work and

her leadership on several occasions.  Several of Plaintiff's subordinates and one employee of a

Planned Parenthood affiliate also praised her work.  Plaintiff and Moreno had weekly one-on-one

meetings throughout Plaintiff's employment.  Moreno did not criticize Plaintiff's work until at

least August 2020.  On August 11, 2020, the same day as Plaintiff's first meeting with Walker

about the ERG, Moreno first sent Plaintiff written negative feedback on her performance, and

Moreno later sent more detailed feedback.  Plaintiff responded by stating her belief that her

performance was good, citing others' high opinions of her performance and seeking clarification

of some points.

In this litigation, several of Plaintiff's former superiors, peers and subordinates have

testified that they either experienced or were made aware of poor performance by Plaintiff.

Plaintiff disputes whether those witnesses are disinterested and credible, either because they are

named as a defendant (Moreno) or, in some cases, simply because they remain employed at

PPFA.  Among the issues purportedly identified -- all of which Plaintiff vehemently disputes

7

based on her own views of her performance and, in some cases, others' positive feedback -- were a lack of organization, failure to communicate timely, weak writing skills and a lack of sensitivity to DEI issues.  Some of those witnesses testified to noticing issues going back to spring 2020, though Moreno has testified that the issues became more visible in summer 2020 and continued from there.

On November 30, 2020, PPFA fired Plaintiff based on the joint decision of Moreno and several others, including HR professionals.  Prior to being fired, Plaintiff was not put on a performance improvement plan, or "PIP."  Nor did PPFA document her purported performance issues outside of the email exchanges in August, even though PPFA policy recommends such steps in some circumstances, in managers' discretion.  When Plaintiff was fired, she was told that her job was being eliminated and PPFA was "going in a different direction."  Plaintiff was offered a severance package in exchange for a release of claims against PPFA but declined. PPFA's Severance Plan Policy provides that "severance benefits are only payable if an Eligible Employee incurs an Eligible Termination," which includes termination "by reason of reduction in force, reorganization, or elimination of the employee's position," but *not* for "unsatisfactory performance."  Shortly after Plaintiff was fired, PPFA posted a job opening for a similar position.

On January 19, 2021, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of race and religion, hostile work environment, retaliation and unlawful termination.  Plaintiff's lawyer emailed her complaint to PPFA the same day.  The next day, Sherryle Bates, an employee in the DEI office, emailed Jennifer Baxi to ask for "the final copy of the [Jewish ERG] charter with a quick update on the status of their launch?"  In a January 2021 "ERG Progress Report," PPFA announced that the

Jewish ERG would be launched in February 2021.  The ERG's executive sponsor was appointed on February 2, 2021, though it ultimately was not formally launched until April 2021 for a variety of reasons.

## II.   STANDARD

Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for a nonmoving party."  *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *accord Saleem v. Corp. Transp. Grp.*, 854 F.3d 131, 148 (2d Cir. 2017).

In evaluating a motion for summary judgment, a court must "construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Torcivia v. Suffolk Cty.*, 17 F.4th 342, 354 (2d Cir. 2021).  When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing to particular parts of materials in the record.  *See* Fed. R. Civ. P. 56(c)(1)(A).  "A party opposing summary judgment normally does not show the existence of a genuine issue of fact to be tried merely by making assertions that are based on speculation or are conclusory."  *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021).

## III.   DISCUSSION

### A.   Title VII Discrimination

Plaintiff alleges that she was discriminated against on the basis of race and religion because she is Jewish.  Plaintiff asserts that Defendants created a hostile work environment and

that she was fired because of discrimination.  Defendants' motion for summary judgment is granted with respect to the hostile work environment claim but denied with respect to Plaintiff's firing.

### 1.   Hostile Work Environment

"To prevail on a hostile work environment claim, a plaintiff must ultimately prove conduct (1) that is objectively severe or pervasive, that is, conduct that creates an environment that a reasonable person would find hostile or abusive, (2) that the plaintiff subjectively perceives as hostile or abusive, and (3) that creates such an environment because of plaintiff's membership in a protected class." *Tassy v. Buttigieg*, 51 F.4th 521, 533 (2d Cir. 2022) (cleaned up).  To show conduct that was "pervasive," a plaintiff must "show that his or her workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of his or her employment [were] thereby altered."  *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 101 (2d Cir. 2020) (cleaned up).  To be pervasive, "incidents typically must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id.* at 102 (internal quotation marks omitted).  In some cases, even "a single incident may qualify, but to do so it must be 'extraordinarily severe.'" *Id.*  "Furthermore, the plaintiff 'must demonstrate that the conduct occurred because of' [her] protected status," and "that a 'specific basis exists for imputing the conduct . . . to the employer.'" *Id.*

Defendants are entitled to judgment as a matter of law on this claim because, construing the record in the light most favorable to Plaintiff and drawing reasonable inferences in her favor, there is no record of severe or pervasive conduct that creates a hostile or abusive environment because of Plaintiff's race or religion.  This determination may be made by looking to "the totality of the circumstances" and evaluating allegedly discriminatory incidents "cumulatively," rather than by asking whether any "incident of harassment 'standing alone' is sufficient to

sustain [the] hostile work environment claim." *Williams v. N.Y.C. Hous. Auth.*, 61 F.4th 55, 74

(2d Cir. 2023) (internal quotation marks omitted).  Courts also may "analyz[e] each key event in

isolation" to determine whether each one is "sufficiently 'severe'" to sustain the claim on its

own.  *Id.* (internal quotation marks omitted).  The incidents and courses of conduct Plaintiff

identifies, both when considered separately and when taken together, are insufficiently severe or

pervasive to support Plaintiff's hostile work environment claim under Title VII.

First, Plaintiff has identified a handful of either overtly or arguably discriminatory

comments from the year that she worked at PPFA.  Moreno told Plaintiff, in reference to Spruch,

that Moreno did not "want an old Jewish woman running a multicultural department."  Martin-

Robinson commented in a meeting, in substance, that there were too many white Jewish CEOs in

positions of power.  And Walker repeated a comment that he had heard describing Orthodox

Jewish women as "birthing factories," and suggested that Plaintiff's proposed ERG could focus

on education about birth control.  Moreno's comment was made to Plaintiff but concerned a

different employee; Martin-Robinson's comment was made in a meeting that Plaintiff attended

but was not directed to Plaintiff; and Walker's comment was reported second-hand to Plaintiff.

Plaintiff also was aware that PPFA had created a t-shirt listing several forms of discrimination

that PPFA seeks to combat, including racism, that does not explicitly list anti-Semitism.  Plaintiff

also heard that some colleagues had complained about being expected to work on and around

important Jewish holidays.  Each of these remarks or conditions could contribute to a hostile

work environment but is not individually "extraordinarily severe."  *Agosto*, 982 F.3d at 102

(internal quotation marks omitted); *cf. Rasmy v. Marriott Int'l*, 952 F.3d 379, 389 (2d Cir. 2020)

("[C]onduct not directly targeted at or spoken to an individual but purposefully taking place in

his presence can nevertheless transform his work environment into a hostile or abusive one

. . . ."); *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997) ("[T]he fact that a plaintiff learns second-hand of a racially derogatory comment or joke by a fellow employee or supervisor also can impact the work environment . . . .").

Second, Plaintiff asserts that PPFA generally, and Walker and Moreno specifically, were resistant to her efforts to create a Jewish ERG.  Plaintiff identifies several arguably insensitive comments, suggesting that combating anti-Semitism in society at large and at PPFA was not important enough to justify the investment of Plaintiff's time or PPFA's resources in the ERG. However, Plaintiff cites emails in which Walker and his colleagues were responsive to Plaintiff's efforts to create the ERG, and making progress toward its establishment.  In context, PPFA's lack of enthusiasm for Plaintiff's efforts and the handful of remarks over many months that were arguably ignorant or dismissive also are not "extraordinarily severe."  A reasonable jury could find that Plaintiff subjectively perceived all of the above conduct as creating a hostile or abusive environment, and that such environment was created "because of" her race or religion, since all of those incidents facially bear at least some relation to anti-Semitism.  *Tassy*, 51 F.4th at 533. However, viewing all of those incidents together, and considering, among other things, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with the victim's job performance," the foregoing incidents are neither severe nor pervasive enough to constitute a hostile work environment.  *Rasmy*, 952 F.3d at 387 (cleaned up).

Third, Plaintiff testified at her deposition about "continual" bullying by Moreno throughout her employment.  Plaintiff stated that Moreno's "demeanor" was "aggressive" and "rude" and made her "feel uncomfortable" often during her time at PPFA.  Plaintiff testified that she could not recall a specific instance of bullying, that she could not "describe [Moreno's]

12

bullying tone," but that her "overall behavior" generally became hostile after Plaintiff began advocating for the creation of a Jewish ERG.  Again, a reasonable jury could credit Plaintiff's subjective perception that Moreno's conduct created a hostile or abusive environment by constantly making Plaintiff "feel incompetent and small . . . insecure and anxious" and "ma[king] it difficult for [her] to do [her] job."  And a jury could infer that, even though the "bullying" was not facially discriminatory, it was part of a course of discriminatory conduct because Moreno previously had made an overtly anti-Semitic comment.  *See Rasmy*, 952 F.3d at 388 ("[Second Circuit] case law is clear that when the same individuals engage in some harassment that is explicitly discriminatory and some that is not, the entire course of conduct is relevant to a hostile work environment claim."); *Pucino v. Verizon Wireless Comm'cns, Inc.*, 618 F.3d 112, 118 (2d Cir. 2010) ("[E]ven if [certain] incidents . . . did not directly amount to disparate treatment when considered alone in isolation, an inference that such conduct was gender-based could be drawn by a trier because [certain people who engaged in other discriminatory conduct] were behind them.").  However, Plaintiff's testimony contains no detail on when or how often Moreno allegedly acted this way, what Moreno said or how she said it. Plaintiff's testimony about Moreno's bullying is too vague and conclusory for a jury to find that Moreno's "bullying" itself was "extraordinarily severe" or that, when taken together with the more specific instances of purported anti-Semitism above, it was "sufficiently severe or pervasive to alter the conditions of [Plaintiff's] employment."  *Williams*, 61 F.4th at 68 (internal quotation marks omitted); *see Pucino*, 618 F.3d at 119 ("'[P]urely conclusory allegations of discrimination' that are devoid of 'concrete particulars' do not suffice to avoid summary judgment." (internal quotation marks omitted)).  The record facts construed in Plaintiff's favor are insufficient to support a Title VII hostile work environment claim.

### 2.  Unlawful Firing

Defendants' motion for summary judgment is denied on Plaintiff's claim that she was terminated because she is Jewish.  A reasonable jury could find that Defendants' decision to terminate Plaintiff was based at least in part on her race and religion.

### a.  Burden-Shifting Framework

Title VII makes it unlawful for employers "to discharge . . . or otherwise to discriminate against any individual" in his or her employment "because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).  Title VII "discrimination claims are governed at the summary judgment stage by the burden-shifting analysis first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015); *accord Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 328 (S.D.N.Y. 2020).

"Under this framework, a plaintiff bears the initial burden of establishing a *prima facie* case of discrimination." *Smith*, 440 F. Supp. 3d at 328 (citing *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008)).  "[P]laintiff must establish a *prima facie* case of sex discrimination by demonstrating that '(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.'" *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016).  Plaintiff's burden at this step is "minimal." *Id.*

"Once a plaintiff has established a *prima facie* case, a presumption arises that more likely than not the adverse conduct was based on the consideration of impermissible factors." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015).  "At that point, the burden of production shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for the disparate treatment." *Smith*, 440 F. Supp. 3d at 328 (quoting *Vega*, 801 F.3d at 83) (internal quotation marks omitted); *see also Walsh*, 838 F.3d at 75.

"If the employer carries that burden, 'the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination.'" *Walsh*, 838 F.3d at 75. "To avoid summary judgment in an employment discrimination case, 'the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the "motivating" factors.'" *Holcomb*, 521 F.3d at 138; *accord Smith*, 440 F. Supp. 3d at 328.

### b.  Analysis

Defendants assume and do not dispute that Plaintiff has made a prima facie case of discrimination.  At the second *McDonnell-Douglas* step, Defendants have carried their burden of proffering a non-discriminatory reason for Plaintiff's firing -- poor job performance.  The third step of the burden-shifting framework is at issue on this motion.  Contrary to Defendants' argument, a reasonable jury need not find that Defendants' proffered reason is entirely pretextual in the sense of being false.  Defendants' motion is denied because, for many reasons, a reasonable jury could find that Plaintiff's job performance was not the only reason for her firing and discrimination was a motivating factor.

### i.  Plaintiff's Advocacy for a Jewish ERG and Performance Issues

The timing and context of the "performance" concerns Defendants cite gives rise to an inference that they were pretextual or at least bound up with Plaintiff's race and religion. Specifically, Moreno never raised performance concerns with Plaintiff before she started advocating for the creation of a Jewish ERG.  Moreno first gave Plaintiff written negative feedback the same day Plaintiff first met with Walker to initiate the ERG process in earnest.

15

While there is no evidence that Walker was involved in Plaintiff's firing, as discussed below, his comments are revealing, whether they arose from overt anti-Semitism or ignorance. Walker's comments to Plaintiff and Squires about the proper role of a Jewish ERG reasonably can be read to express skepticism about whether a Jewish ERG with a focus on anti-Semitism was really necessary or important, at a time shortly after the killing of George Floyd when there was a heightened focus on anti-Black racism and other racial and social justice issues.

Walker's comments lend context to Moreno's comments around the same time. Moreno discussed Plaintiff's efforts to create the Jewish ERG with another colleague, Jamilla Galloway. Moreno expressed skepticism that Plaintiff should dedicate time to creating an ERG when her performance of her job duties was slipping. In the same conversation, however, Moreno connected Plaintiff's effort to create an ERG with her purported insensitivity to other racial justice issues on which her colleagues were focused.

Defendants also suddenly expressed renewed interest in the Jewish ERG immediately upon receiving notice of Plaintiff's EEOC complaint, after a period of relative dormancy. That fact may raise an inference that Defendants' support of the group now is not genuine. While Defendants offer innocent, non-discriminatory explanations for each of these issues, it is the jury's role to decide whether those are more convincing than Plaintiffs' explanations. A reasonable jury could infer that Plaintiff was fired in part because Defendants were skeptical of the need to dedicate resources to addressing concerns of Jewish employees and Jewish people.

### ii. Moreno's Allegedly Anti-Semitic Remark and the Same-Protected-Class Inference

Moreno made the decision to fire Plaintiff, jointly with several others including PPFA's HR department. Moreno's remark that an old Jewish woman should not run a "multicultural" department could be read as expressing the view that at least certain Jewish people were not the

16

best messengers to PPFA's diverse constituencies.  Plaintiff's job included PPFA's brand

messaging, and Defendants argue that one of Plaintiff's deficits justifying her firing was her

insensitivity to DEI and racial justice issues affecting the diverse communities PPFA serves.  If

Moreno's comment were considered in a vacuum, it might be a mere "stray remark" unrelated to

Plaintiff.  *See Lively v. WAFRA Inv. Adv. Grp.*, 6 F.4th 293, 307 (2d Cir. 2021).  But Moreno's

remark, considered with Plaintiff's own job responsibilities and Defendants' arguable resistance

to her pursuit of a Jewish ERG, could support an inference that Plaintiff was fired at least in part

because she is Jewish.

   Defendants dispute that Moreno ever did or would express anti-Semitic views.  But

Plaintiff's testimony to facts within her direct, personal knowledge cannot be discounted at this

stage, even in the absence of corroborating evidence.  *See, e.g.*, *Danzer v. Norden Sys., Inc.*, 151

F.3d 50, 57 (2d Cir. 1998) ("To hold, as defendants ask us to do, that the nonmovant's

allegations of fact are (because 'self-serving') insufficient to fend off summary judgment would

be to thrust courts -- at an inappropriate stage -- into the adjudication of the merits."); *accord*

*Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 51 (2d Cir. 2022).

   While courts may draw an inference against discrimination because Moreno is Jewish,

that presumption is not conclusive.  *Feingold v. New York*, 366 F.3d 138, 155 (2d Cir. 2004)

("We also reject the district court's suggestion that an inference of discrimination cannot be

drawn because [Plaintiff] was fired by another Jew . . . ."); *accord Lue v. JPMorgan Chase &*

*Co.*, 768 F. App'x 7, 10 (2d Cir. 2019) (summary order).  Based on all the foregoing evidence, a

reasonable jury could find that Moreno fired Plaintiff in part because she is Jewish.  Contrary to

Defendants' arguments, that would not require questioning or discounting Moreno's Jewish

identity; rather, Moreno simply may not view her Jewish identity in the same way as Plaintiff and may not view herself and all Jewish people as similar in all relevant respects.

### iii.    Other Circumstances Surrounding Plaintiff's Firing

Several other factors contribute to an inference that Plaintiff's performance was not the only reason for her firing and was in part a cover for discrimination.  First, Defendants' decision not to place Plaintiff on a PIP, or more thoroughly document purportedly pervasive performance issues, arguably constitutes a deviation from regular procedures.  *See, e.g.*, *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 51 (2d Cir. 1998) ("[E]vidence of [the employer's] inconsistent application of its disciplinary policy was sufficient for the jury to . . . find for the plaintiff."); *accord Hamilton v. DeGennaro*, No. 17 Civ. 7170, 2019 WL 6307200, at *11 (S.D.N.Y. Nov. 25, 2019); *see also Stern v. Trustees of Columbia Univ. in City of N.Y.*, 131 F.3d 305 (2d Cir. 1997); *Heiden v. N.Y.C. Health & Hosps. Corp.*, No. 20 Civ. 10288, 2023 WL 171888, at *28 (S.D.N.Y. Jan. 11, 2023).  Even if PPFA's policies did not *require* those steps, it is undisputed that they are recommended tools that were used in other situations.

Second, Defendants' shifting explanations for Plaintiff's firing also raise an inference of pretext.  *See, e.g.*, *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 137 (2d Cir. 2000) ("The inconsistency between the justification for [Plaintiff's] dismissal in the two proceedings raises a genuine issue of material fact with regard to the veracity of this non-discriminatory reason."); *accord Johnson v. Rockland Cnty. BOCES*, No. 21 Civ. 3375, 2022 WL 4538452, at *16 (S.D.N.Y. Sept. 28, 2022).  Defendants dispute that they ever told Plaintiff her position was being eliminated, but competent testimony from Plaintiff and others to that effect is sufficient to raise a triable issue of fact.  A firing for that reason also would be more consistent with Defendants having offered Plaintiff a severance package, which Defendants' own policy states is

*only* available in certain enumerated circumstances and *not* in performance-based firings.  A jury

may find it significant that Defendants relied on one explanation in an effort to induce Plaintiff to

release them from liability and a different explanation after she refused.

Third, the so-called "same-actor inference" may weigh against finding discrimination

"[w]hen the same actor hires a person within a protected class, and then later fires that same

person."  *Carlton*, 202 F.3d at 137; *accord Fletcher v. ABM Bldg. Value*, No. 14 Civ. 4712, 2018

WL 1801310, at *19 (S.D.N.Y. Mar. 28, 2018), *aff'd*, 775 F. App'x 8 (2d Cir. 2019).  But a jury

could find several reasons not to apply that inference here.  First, there is no record evidence that

Defendants knew that Plaintiff was Jewish when she was hired.  *Cf., e.g.*, *Farmer v. Shake Shack*

*Enters., LLC*, 473 F. Supp. 3d 309, 329 n.6 (S.D.N.Y. 2020) ("The same-actor doctrine has no

bearing on Farmer's pregnancy discrimination claims, because, on the facts pled, Cordova was

unaware at the time he hired Farmer that she was pregnant.").  Second, the circumstances

changed substantially in the year between her hiring and firing.  Plaintiff began advocating for a

Jewish ERG that some colleagues evidently viewed as a poor use of her time or PPFA resources.

Therefore, a reasonable jury could reject or discount the same-actor inference and conclude, on

the basis of all the evidence above, that Plaintiff's race and religion played a role in her firing.

*See Colbert v. FSA Store, Inc.*, No. 19 Civ. 9828, 2020 WL 1989404, at *5 (S.D.N.Y. Apr. 27,

2020) (noting that the inference "is not to become a substitute for fact-intensive inquiry into the

particular circumstances at hand").

### B.    Title VII Retaliation

Plaintiff alleges that she was retaliated against for engaging in two types of protected

activity: advocating for the Jewish ERG and raising complaints with management about anti-

Semitism and microaggressions against Jewish people at PPFA.  Plaintiff alleges that, in

response to her protected activity, Defendants fired her and created a hostile work environment.

Defendants' motion for summary judgment again is granted with respect to the hostile work environment claim but denied with respect to Plaintiff's firing.

### 1.  Burden-Shifting Framework

Title VII prohibits retaliation "against any . . . employee[ ] . . . because [she] has opposed any practice" made unlawful by Title VII.  42 U.S.C. § 2000e–3(a).  "[R]etaliation claims are analyzed using the *McDonnell Douglas* burden-shifting framework."  *Smith*, 440 F. Supp. 3d at 340 (citing *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013)); *see Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015).  To establish a prima facie case of retaliation, a plaintiff must show "(1) that [she] participated in a protected activity, (2) that [she] suffered an adverse employment action, and (3) that there was a causal connection between [her] engaging in the protected activity and the adverse employment action."  *Rasmy*, 952 F.3d at 391.  "Once a plaintiff makes out a *prima facie* case of retaliation under the burden-shifting framework, the defendant may rebut the presumption of retaliation by articulating a legitimate, non-retaliatory reason for the adverse employment action.  If the defendant provides an explanation, the plaintiff must prove that the desire to retaliate was the but-for cause of the challenged employment action."  *Id.* at 392 (cleaned up).

### 2.  Analysis

Defendants' motion for summary judgment is granted to the extent Plaintiff claims that a hostile work environment constituted a retaliatory adverse employment action, because Plaintiff has not made a prima facie showing that a hostile work environment existed.  Defendants' motion is denied to the extent Plaintiff claims she was fired in retaliation for protected activity.

#### a.  Hostile Work Environment

"In general, a retaliatory hostile work environment may indeed constitute materially adverse employment action."  *Marquez v. City of New York*, No. 14 Civ. 8185, 2016 WL

4767577, at *13 (S.D.N.Y. Sept. 12, 2016) (citing *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999)); *accord Forman v. N.Y.C. Dep't of Educ.*, No. 19 Civ. 8156, 2022 WL 912130, at *12 (S.D.N.Y. Mar. 29, 2022).  But "in order to establish a *prima facie* retaliation claim, a Plaintiff must satisfy the hostile environment standard."  *Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d 379, 392 (S.D.N.Y. 2019).  Plaintiff has failed to satisfy the prima facie standard for a retaliatory hostile work environment for substantially the same reasons she has not established a discriminatory hostile work environment.  The most severe incidents that might support a hostile work environment claim -- such as Moreno's comment about Spruch, Martin-Robinson's remark about Jewish CEOs and Moreno's alleged bullying -- all predate any protected activity by Plaintiff, as do more minor issues such as the allegedly discriminatory t-shirt and work around Jewish holidays.  A handful of stray, arguably insensitive comments by Walker and one by Moreno following the protected activity are insufficient.

### b.  Retaliatory Firing

Defendants' motion for summary judgment is denied on Plaintiff's retaliatory firing claim for substantially the same reason that summary judgment is denied on her discriminatory firing claim.  As discussed above, Defendants had not given Plaintiff or documented any negative performance feedback prior to her advocacy for a Jewish ERG.  Moreno knew of Plaintiff's advocacy and arguably viewed it as a bad use of Plaintiff's time.  A reasonably jury could conclude that Plaintiff was fired in retaliation for complaining about anti-Semitism and promoting a Jewish ERG to address it.

### C.    NYSHRL and NYCHRL

Defendants' motion for summary judgment is denied with respect to Plaintiff's discrimination and retaliation claims against PPFA under the NYSHRL and NYCHRL, except to the extent Plaintiff's retaliation claim is predicated on a hostile work environment.  That is,

Plaintiff's surviving state and city law claims against PPFA are (1) hostile work environment; (2) discriminatory firing and (3) retaliatory firing.  As for individual liability on the surviving claims, Moreno is denied summary judgment.  Walker is granted summary judgment and dismissed from the case.

### 1.   Relationship to Title VII

The NYCHRL is less demanding of plaintiffs than Title VII, on both discrimination and retaliation claims.  *See Cadet v. All. Nursing Staffing of N.Y., Inc.*, No. 21 Civ. 3994, 2022 WL 4584246, at *10 (S.D.N.Y. Sept. 29, 2022) ("[F]ederal civil rights statutes serve as a floor below which the City's Human Rights law cannot fall." (cleaned up)); *Ya-Chen Chen*, 805 F.3d at 76 ("NYCHRL's retaliation provision is broader than Title VII's . . . ."); *Aiken v. MTA N.Y.C. Transit*, No. 18 Civ. 11756, 2021 WL 6621579, at *13 (S.D.N.Y. Sept. 2, 2021) ("[A] plaintiff proceeding under the more generous city law need not show that she suffered an adverse employment action [and] need only demonstrate that she was treated differently from others in a way that was more than trivial, insubstantial, or petty." (cleaned up)).

The NYSHRL also is now more generous than Title VII.  For claims that accrued on or after August 12, 2019, the effective date of recent amendments, "the standard for [NYSHRL] claims [is] closer to the standard of the NYCHRL."  *Livingston v. City of New York*, 563 F. Supp. 3d 201, 233 n.14 (S.D.N.Y. 2021).  Because all of Plaintiff's NYSHRL claims accrued in or after October 2019, they "rise and fall with her NYCHRL claims."  *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021).

### 2.   Analysis

Plaintiff's claims of discriminatory and retaliatory firing survived under Title VII. Because the NYSHRL and NYCHRL parallel Title VII in some respects and are more generous

than Title VII in others, Plaintiff's state and city claims for discriminatory and retaliatory firing

survive summary judgment for the same reasons and *a fortiori*.

Plaintiff's hostile work environment claims failed under Title VII, however, because the

record does not show race- or religion-based harassment that is sufficiently "severe or

pervasive."  Under the NYCHRL and the amended NYSHRL, however, "the conduct's severity

and pervasiveness are relevant only to the issue of damages."  *Mihalik v. Credit Agricole*

*Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013); *accord Aiken*, 2021 WL 6621579, at

\*13; *see* N.Y.C. Admin. Code § 296(h) (prohibiting discriminatory harassment "regardless of

whether such harassment would be considered severe or pervasive under precedent applied to

harassment claims").  Plaintiff's hostile work environment claims therefore must be analyzed

separately.

### a.  Discrimination -- Hostile Work Environment

To prove discrimination under state or city law, Plaintiff need only show that she "was

treated less well than other employees on the basis of a protected characteristic," i.e., "*because of*

a prohibited factor."  *Santiago v. ACACIA Network, Inc.*, No. 22 Civ. 228, 2022 WL 6775835, at

\*7 (S.D.N.Y. Oct. 10, 2022); *Syeed*, 568 F. Supp. 3d at 321.  While the isolated incidents above

were not particularly severe and do not rise to the level of liability under Title VII, a reasonable

jury could find that Plaintiff was treated "less well" because she is Jewish.  The comments by

Moreno and Martin-Robinson, at least, to the extent they suggested that Jewish people should not

hold certain positions of power, rise above the level of non-actionable "petty slights and trivial

inconveniences."  *Aiken*, 2021 WL 6621579, at \*13.  Plaintiff's state and city hostile work

environment claims thus survive summary judgment.

### b.  Retaliation -- Hostile Work Environment

To prove retaliation under state or city law, "plaintiff need not prove any 'adverse' employment action; instead, she must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity."  *Benzinger v. Lukoil Pan Am., LLC*, 447 F. Supp. 3d 99, 129 (S.D.N.Y. 2020).  "Even under this less demanding standard, a plaintiff still must establish that there was a causal connection between [her] protected activity and the employer's subsequent action," and "that a defendant's legitimate reason . . . was pretextual or motivated at least in part by an impermissible motive."  *Livingston*, 563 F. Supp. 3d at 246.

Defendants are granted summary judgment on Plaintiff's state and city retaliation claims based on a hostile work environment.  Plaintiff claims that Defendants created a hostile work environment to retaliate against her complaints of anti-Semitism and her advocacy for a Jewish ERG.  There is no evidence of a causal connection between any harassing or abusive conduct and Plaintiff's protected activity.  As discussed above, Moreno's allegedly discriminatory comments and actions predated Plaintiff's advocacy for the ERG and for greater focus on anti-Semitism and microaggressions.  The only remarks with any link to Plaintiff's advocacy came from Walker, and no part of Walker's conduct "would be reasonably likely to deter a person from engaging in protected activity."  *Benzinger*, 447 F. Supp. 3d at 129.  Plaintiff complains that Walker made a few comments based on stereotypes about Orthodox Jewish people, asked Plaintiff to make a case for spending PPFA resources on her project, and did not respond precisely the way Plaintiff would have liked to certain emails.  Walker never punished Plaintiff for her advocacy or refused to act on Plaintiff's requests or complaints.  The fact that Walker arguably acted and spoke out of ignorance on a few occasions would not deter anyone from advocating for an ERG, and indeed, did not deter Plaintiff.

### 3. Individual Liability

On Plaintiff's surviving NYSHRL and NYCHRL claims -- for discriminatory firing, discriminatory hostile work environment and retaliatory firing -- Defendants' motion is granted on all claims against Walker and denied on all claims against Moreno.[2]

#### a. Legal Standards

The NYCHRL creates principal liability for individual defendants who "participate in the conduct giving rise to a discrimination claim" by making it unlawful "[f]or an employer or an employee or agent thereof, because of [a protected characteristic] to discriminate against such person in . . . terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8-107(1)(a)(3). *See Feingold*, 366 F.3d at 158; *accord Deveaux v. Skechers USA, Inc.*, No. 19 Civ. 9734, 2020 WL 1812741, at *5 (S.D.N.Y. Apr. 9, 2020). Separately, the NYCHRL provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so." N.Y.C. Admin. Code § 8-107(6).

Under the NYSHRL, "an individual who has an ownership interest in the relevant organization or the power to do more than carry out personnel decisions made by others" is liable as a principal, but under the "aiding and abetting provision . . . personal liability may be imposed on an individual who does not have such authority, but who also 'actually participates in the conduct giving rise to the discrimination.'" *Deveaux*, 2020 WL 1812741, at *3 (quoting

---

[2] Individual liability need not be addressed for Plaintiff's Title VII claims, because Plaintiff asserted those claims only against PPFA. In any event, in most cases "individuals are not subject to liability under Title VII." *Sassaman v. Gamache*, 566 F.3d 307, 315 (2d Cir. 2009) (cleaned up); *accord Accely v. Consol. Edison Co. of N.Y.*, No. 19 Civ. 5984, 2022 WL 973415, at *5 (S.D.N.Y. Mar. 31, 2022).

*Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 57 (2d Cir. 2012), and then quoting *Feingold*, 366 F.3d at 158).

### b. Analysis

#### i. Moreno

It is undisputed that "Moreno had unilateral authority to terminate Plaintiff." Moreno therefore is an "employer" under the NYSHRL and may be liable as a principal as well as an aider-and-abettor under that statute and the NYCHRL. Plaintiff's claims against Moreno individually survive because she was directly responsible both for Plaintiff's firing and at least one of the key incidents underpinning Plaintiff's hostile work environment claim.

#### ii. Walker

Summary judgment is granted to Walker on the claims against him because there is no record evidence that he played any role in Plaintiff's firing or in creating a hostile work environment that is actionable under state or city law.

Walker is not liable for participating in creating a hostile work environment for substantially the reasons, discussed above, that Plaintiff's retaliatory hostile work environment claim fails. Walker made a handful of comments to Plaintiff, in the course of discussing ways that a Jewish ERG could engage in community outreach, which invoked stereotypes about Orthodox Jewish people. While there is no evidence in the record that Plaintiff identifies as Orthodox, Plaintiff found those remarks offensive to Jewish people generally. Walker also asked Plaintiff to put a small amount of additional effort into a business case for the Jewish ERG. When Plaintiff wrote to Walker that the Jewish ERG would be a valuable opportunity to address anti-Semitism and microaggressions within PPFA, Walker responded by telling Plaintiff that the group would be approved, though he did not specifically respond to each point in Plaintiff's

26

email.  Taken together, no reasonable jury could find that those words and actions amounted to more than "petty slights and trivial inconveniences."  *Aiken*, 2021 WL 6621579, at *13.

Walker also is not liable for Plaintiff's firing because there is no evidence he played any role in the decision to fire her.  Contrary to Plaintiff's argument, the fact that Walker generally was part of PPFA's leadership is not evidence that he had authority to hire and fire Plaintiff, nor that he participated in her firing.  Plaintiff asserts that Walker and several of the individuals who *were* involved in Plaintiff's firing all report to the same person -- PPFA's Chief Human Resources Officer -- and sometimes were in the same meetings.  Even assuming that is true, Plaintiff cites no evidence that Walker was ever in a meeting about Plaintiff's firing, nor that Walker and Moreno ever discussed Plaintiff's advocacy for the Jewish ERG.  Moreno's awareness of Plaintiff's activities does not give rise to an inference that Walker was involved.

### D.    Section 1981

Each of Plaintiff's claims are analyzed under the same standards under both Title VII and § 1981.  *Littlejohn v. City of New York*, 795 F.3d 297, 312, 315-16, 320-21 (2d Cir. 2015) (analyzing disparate treatment, retaliation and hostile work environment claims under the same standards for both statutes); *accord Cadet*, 2022 WL 4584246, at *10.  Defendants' motion for summary judgment on Plaintiff's § 1981 discrimination claim against PPFA is thus granted in part and denied in part to the same extent as PPFA's motion on Plaintiff's Title VII claim.

Additionally, unlike Title VII and more like the state and city laws, an individual may be liable under § 1981 "if that individual is 'personally involved in the alleged deprivation.'" *Littlejohn*, 795 F.3d at 314.  Similar to the NYSHRL and NYCHRL, "individual liability exists only where a defendant actually participated in the conduct giving rise to a discrimination claim."  *Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 75-76 (S.D.N.Y. 2016)

(cleaned up).  Accordingly, on the § 1981 claims, Walker is granted summary judgment and Moreno is denied summary judgment on the surviving claims for the reasons discussed above.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part.  For clarity, Defendants' motion is granted with respect to all of Plaintiff's Title VII and § 1981 claims that are predicated on a hostile work environment, all of Plaintiff's claims individually against Walker, and Plaintiff's NYSHRL and NYCHRL retaliation claims to the extent they are based on a hostile work environment rather than on Plaintiff's firing. Plaintiff's surviving claims are: Title VII discrimination and retaliation claims against PPFA based on Plaintiff's firing; § 1981 discrimination and retaliation claims against PPFA and Moreno based on Plaintiff's firing; NYSHRL and NYCHRL claims for discrimination against PPFA and Moreno based on Plaintiff's firing and on a hostile work environment; NYSHRL and NYCHRL claims for retaliation against PPFA and Moreno based only on Plaintiff's firing.

The Clerk of Court is respectfully directed to close the motion at Docket Number 85.

Dated: March 29, 2023
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE